CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

August 13, 2025

LAURA A. AUSTIN, CLERK
BY:
        s/B. McAbee
        DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA DANVILLE DIVISION

| | | |
|---|---|---|
| **LEVAR FOWLER**, on behalf of himself and others similarly situated | ) | **JURY TRIAL REQUSTED** |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Civil Action No. 4:24-cv-00029-TTC-CKM |
| V. | ) | |
| | ) | **COLLECTIVE CERTIFICATION REQUESTED** |
| **CAESARS VIRGINIA, LLC**, | ) | |
| | ) | |
| | ) | **CLASS CERTIFICATION REQUESTED** |
| *Defendant*. | ) | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Levar Fowler ("Mr. Fowler" or "Plaintiff") by and through undersigned counsel, brings this action against Defendant Caesars Virginia, LLC ("Caesars") under Title VII, 42 U.S.C. § 2000e et seq., the Virginia Human Rights Act ("VHRA"), Va. Code Ann. § 2.2-3900 et seq., the Fair Labor Standards Act ( "FLSA"), 29 U.S.C. § 203, et seq., and the Virginia Wage Payment Act ( "VWP`A"), Va. Code Ann. § 40.1-29, et seq.

### I.    INTRODUCTION

1.    This case involves racial discrimination that created a hostile work environment, retaliation for opposing such violations of state and federal law, and systematic wage theft that violates the FLSA and VWPA. Plaintiff has evidence that Caesars, through its authorized agents: (1) racially discriminated against Mr. Fowler; (2) refused to investigate his reports of racist language and actions; (3) retaliated against him for reporting the discrimination to management; (4) terminated him using the pretext that he was bullying other employees and harassing

1

customers; and violated the FLSA and VWPA by failing to include the sign-on bonus he earned in his regular rates of pay or overtime premiums.

2.      Plaintiff filed a Complaint against Defendant on August 7, 2024.

3.      After recently discovered information, Plaintiff now files this Amended Complaint asserting claims of unpaid wages in violation of the FLSA and VWPA.

## II.    JURISDICTION AND VENUE

4.      This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., the Virginia Human Rights Act ("VHRA"), Va. Code Ann. § 2.2-3900, et seq., the Fair Labor Standards Act ( "FLSA"), 29 U.S.C. § 203, et seq., and the Virginia Wage Payment Act ( "VWP`A"), Va. Code Ann. § 40.1-29, et seq.

5.      This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b), and 28 U.S.C. § 1331.

6.      This Court has supplemental subject matter jurisdiction over the claims arising under Virginia state law under 28 U.S.C.§ 1367(a) because they are so related to the federal claims that they form part of the same case or controversy.

7.      Venue is proper in this forum pursuant to Va. Code Ann. § 8.01-262(4) because Caesars operates the casino that employed Plaintiff in Danville, Virginia, a substantial part of the events or omissions giving rise to the claims occurred here, and Caesars has done substantial business here.

## III.    PARTIES

### Named Plaintiff

8.      Named Plaintiff, Levar Fowler, is a United States citizen and legal resident of the Commonwealth of Virginia.

9.      At all times relevant, Mr. Fowler was employed by Defendant as an assistant shift manager and was hired on May 1, 2023.

10.     Mr. Fowler is an African American male and was terminated when he complained about racist treatment and comments made by his co-worker that management failed to correct.

11.     Recently discovered documents that were produced during discovery show that named Plaintiff was undercompensated on his overtime wages.

12.     Named Plaintiff brings this action on behalf of himself and those similar situated, and he given his written consent to bring this action to require Caesars to pay him and all others similarly situated for all unpaid wages and seeks all available remedies for Defendant's violations of the FLSA and VWPA.

13.     Caesars Virginia, LLC ("Caesars") is a Delaware Corporation with its headquarters located at 1 Caesars Palace Dr., Las Vegas, Nevada 89109-8969.

14.     Caesar's Danville location at which Plaintiff worked is located at 1100 W. Main St., Danville, Virginia 2454.

## IV.    EXHAUSTION OF REMEDIES

15.     On or about July 20, 2023, Mr. Fowler was terminated from his position as an assistant shift manager for Caesar's location in Danville, Virginia.

16.     On or about August 1, 2023, Mr. Fowler filed a charge (**Exhibit 1**) with the Equal Employment Opportunity Commission ("EEOC") alleging that Defendant had discriminated and retaliated against him based on his race (African American). This Charge was brought within the 300 days provided under federal and state law.

17.     On or about August 3, 2023, Mr. Fowler filed a charge (**Exhibit 2**) with the Virginia Office of Civil Rights ("VOCR") alleging that Defendant had discriminated and retaliated against

him based on his race (African American). This Charge was brought within the 300 days provided under federal and state law.

18.    On or about July 15, 2024, Plaintiff asked the EEOC to issue a Notice of Right to Sue as more than 180 days had passed without any indication the EEOC was close to completing its investigation.

19.    On or about July 15, 2024, the EEOC issued a Notice of Right to Sue (**Exhibit 3**) giving Mr. Fowler 90 days to file suit against Defendant on the basis of the claims alleged in his charge.

20.    On or about July 24, 2024, Plaintiff asked the VOCR to issue a Notice of Right to Sue as more than 180 days had passed without any indication the VOCR was close to completing its investigation.

21.    On or about July 25, 2024, the EEOC issued a Notice of Right to Sue (**Exhibit 4**) giving Mr. Fowler 90 days to file suit against Defendant on the basis of the claims alleged in his charge.

22.    Mr. Fowler now brings this Complaint within the time periods permitted to do so.

## V.    LEGAL FRAMEWORK: INDIVIDUAL ALLEGATIONS

### A.    Title VII of the Civil Rights Act of 1964.

23.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S. Code § 2000e, et seq. forbids discrimination or retaliation on the basis of race, color, religion sex, or national origin.

### B.    Virginia's Human Rights Act, Va. Code Ann. § 2.2-3900, et seq.

24.    Under Va. Code Ann § 2.2-3905, "[i]t is an unlawful discriminatory practice for [a]n employer to [f]ail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to such individual's compensation, terms, conditions, or privileges of employment

because of such individual's ... race...."

25.    The VHRA also prohibits employers from retaliating against employees for opposing unlawful discrimination.

## VI.    LEGAL FRAMEWORK: CLASS & COLLECTIVE ACTION ALLEGATIONS

### C.    <u>Virginia Wage Payment Act</u>

26.    Under the Virginia Wage Payment Act ("VWPA"), it is unlawful for an employer to withhold any part of an employee's wages subject to certain exemptions which are not relevant here. Va. Code Ann. § 40.1-29(C).

27.    Likewise, an employer who violates the FLSA are liable to their employees for the same damages and remedies provided under the FLSA as modified by Va. Code Ann. § 40.1-29(J).

28.    Under Va. Code Ann. § 40.1-29(J), "if an employer fails to pay wages to an employee in accordance with [the VWPA], the employee may bring an action … against the employer in a court of competent jurisdiction to recover payment of the wages, and the court shall award the wages owed, an additional equal amount as liquidated damages, plus prejudgment interest thereon as provided in subsection G [8%], and reasonable attorney fees and costs."

29.    Moreover, "[i]f the court finds that the employer knowingly failed to pay wages to an employee in accordance with this section or § 40.1-29.2, the court shall award the employee an amount equal to triple the amount of wages due and reasonable attorney fees and costs." <u>Id.</u>  "[A] person acts 'knowingly' if the person, with respect to information, (i) has actual knowledge of the information, (ii) acts in deliberate ignorance of the truth or falsity of the information, or (iii) acts in reckless disregard of the truth or falsity of the information.

30.    Establishing that a person acted knowingly shall not require proof of specific intent to defraud. Va. Code Ann. § 40.1-29(J).

31.     Under Va. Code Ann. § 40.1-33.2, an employer shall not discharge or in any other manner discriminate against an employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under § 40.1-29.

D. **The Fair Labor Standards Act**

32.     The Fair Labor Standards Act ("FLSA" or "the Act"), 29 U.S.C. § 203 et seq., establishes minimum wage, overtime pay, record keeping, and employment standards for employees in the private sector and in federal, state, and local government.

33.     Under 29 U.S.C. § 206, employers are required to compensate their employees their minimum wages for all hours worked.

34.     Under 29 U.S.C. § 207(a)(1), employers are also required to compensate their employees at least one and one-half times their regular rate if they work longer than forty hours in any workweek.

35.     Under § 207(e), in determining the employee's "regular rate," all remuneration for employment must be included unless specifically excluded.

36.     Under 29 CFR § 778.211, discretionary bonuses need not be included in the calculation of the employee's regular rate, however, nondiscretionary bonuses **must** be included.

37.     Nondiscretionary bonuses are those which are determined by the employer without prior promise or agreement.  Id.

**VII.    STATEMENT OF FACTS**

38.     Caesars Resort Collection, LLC d/b/a Caesars Virginia ("Caesars") operates as a luxury hotel and casino located at 1100 West Main Street, Danville, Virginia 24541.

39.     Mr. Fowler is an African American male who was employed by Caesars at its Danville, Virginia location.

40.     Mr. Fowler began his employment with Caesars on May 1, 2023.

41.     Mr. Fowler worked for Caesars as a Table Games Dual Rate Assistant Shift Manager and Supervisor ("DRASM").

42.     Mr. Fowler was generally responsible for supervising the operations of two to eight table games on an assigned shift.

43.     Because he was a DRASM, Mr. Fowler regularly interacted with other employees, customers, and managers of Caesars.

44.     Typically, DRASMs are assigned to one of three shifts: day, swing, and graveyard.

45.     Mr. Fowler worked the graveyard shift.

46.     During his shift, DRASMs operated in a dual role as either a Supervisor or the Assistant Shift Manager ("ASM"), depending on what was needed in the shift. 32. Throughout his employment, Mr. Fowler was instructed to report to his immediate supervisor, Antonia 'Toni' Trammell ("Ms. Trammell").

47.     Ms. Trammell worked as the Table Games Shift Manager for the graveyard shift.

48.     Mr. Thyer worked as the Table Games Assistant Shift Manager for the graveyard shift.

49.     Because Mr. Thyer and Mr. Fowler were both assistant managers, many of their shifts overlapped and they worked together frequently.

50.     Although they shared the same rank and authority, Mr. Thyer treated Mr. Fowler as a subordinate.

51.     Frequently, Mr. Thyer referred to Mr. Fowler as "boy" when he needed something done.

52.     The racially charged connotation of the word "boy" when used to address a Black,

adult man is well known.

53.　　After weeks of ignoring the comments, Mr. Fowler decided to act.

54.　　On May 24, 2023, Mr. Fowler complained to Ms. Trammel about this behavior.

55.　　As a result of his complaints, Mr. Thyer was suspended for two days.

56.　　Following Mr. Thyer's suspension, his behavior toward Mr. Fowler did not improve.

57.　　Curiously, Mr. Thyer was given the authority of "pencil duty," which actually gave him limited authority over Mr. Fowler.

58.　　Once Mr. Thyer was given this power, he began to address Mr. Fowler as one of his employees and his belittling behavior intensified.

59.　　After weeks of this behavior, on June 16, 2023, Mr. Fowler sent Ms. Trammell a text message saying that "[he] couldn't do this nomore" and "[i] really can't work with Matt."

60.　　Instead of investigating the situation, Ms. Trammell told Mr. Fowler to "walk away when [he] had to."

61.　　Mr. Fowler reached out to ask for a meeting after an interaction with Mr. Thyer on July 14, 2023 ("July Interaction").

62.　　In the July Interaction, Mr. Fowler entered the back of the casino to clock in.

63.　　When he entered, Mr. Fowler saw Mr. Thyer had just finished speaking with another employee.

64.　　Mr. Thyer appeared upset after the conversation.

65.　　Upon entering the training room, Mr. Thyer looked at Mr. Fowler and stated, "**<u>you nigg**s are getting out of control</u>**."

66.　　Mr. Thyer began yelling at Mr. Fowler as if trying to intimidate him.

67.     Following Ms. Trammell's advice, Mr. Fowler walked away from the situation.

68.     Following this interaction, Mr. Fowler sent another text message to Ms. Trammell, asking to meet with her and Mr. Kevin Schechter ("Mr. Schechter"), the Table Games Director.

69.     Mr. Schechter scheduled a meeting on July 15, 2023, to discuss the incident.

70.     However, the July 15, 2023, meeting did not take place.

71.     Mr. Schechter apologized and rescheduled the meeting for July 18, 2023.

72.     On July 15, 2023, a Dealer reported that Mr. Fowler communicated negative feedback to her in front of hotel guests and players.

73.     That same day, a guest allegedly sent an e-mail to Ms. Trammell complaining about Mr. Fowler.

74.     Coincidentally, both complaints were made the exact same day Mr. Fowler was scheduled to discuss the racist treatment to which he was being subjected.

75.     Mr. Gilbert asked Mr. Fowler to provide a written statement ("Written Statement") in response to these accusations.

76.     On July 19, 2023, Mr. Fowler e-mailed the Written Statement to Human Resources.

77.     In the Written Statement, Mr. Fowler documented the racial slurs and "unethical and unprofessional behavior" Mr. Thyer made towards him.

78.     In his Written Statement, Mr. Fowler documented how he had previously reported Mr. Thyer's behavior to Mr. Schechter and Ms. Trammell.

79.     Mr. Fowler also expressed dismay that the July 18, 2023, meeting was supposed to be about the racist treatment he was experiencing at the hands of Mr. Thyer.

80.     Mr. Fowler stated he believed he "[was] being punished for speaking up about unethical conduct."

9

81.    On July 20, 2023, Mr. Schechter sent Mr. Fowler a text message indicating Mr. Fowler needed to speak with Human Resources the following day.

82.    On July 21, 2023, Mr. Fowler arrived at Caesars to meet with Human Resources, Ms. Gilbert, and Ms. Trammell.

83.    However, upon his arrival, the HR representative attempted to force Mr. Fowler to admit to having bullying Dealers.

84.    Mr. Fowler denied the accusations and attempted to explain the racial discrimination he suffered from Mr. Thyer.

85.    Rather than allowing Mr. Fowler to discuss those allegations further, Defendant terminated his employment.

86.    After Mr. Fowler's termination, recently discovered documents show that he was actually undercompensated during his employment.

87.    When Mr. Fowler was hired, Mr. Fowler was provided a signing bonus. (See **Exhibit 5**.)

88.    The bonus was for $5,000 and payable within the first 30 days of employment.

89.    12 months equates to 2,080 hours of work, meaning this $5,000 equals a pro-rated amount of $2.40/hr.

90.    However, Mr. Fowler's paystubs confirm that when he worked overtime at Caesars, Caesars **did not** incorporate that bonus into his regular rate of pay or overtime premiums.

91.    For example, during the pay-period from 6/02/2023 until 6/15/2023, Mr. Fowler worked 1.25 hours of overtime. (See **Exhibit 6**)

92.    However, on Mr. Fowler's paystub, it identifies that Mr. Fowler was **only** compensated for his overtime at his regular rate of $32.50 instead of $34.90. (Id.)

93.    During the pay-period from 6/16/2023 until 6/29/2023, Mr. Fowler worked 3.75 hours of overtime. (See **Exhibit 7**)

94.    Again, Mr. Fowler's overtime rate was calculated at his rate of only $32.50.  (Id.)

95.    During the pay-period from 6/30/2023 until 7/13/2023, Mr. Fowler worked 7 hours of overtime. (See **Exhibit 8**)

96.    Mr. Fowler's overtime rate was again calculated at a regular rate of only $32.50 (Id.)

97.    Caesars has engaged in this same FLSA/VWPA violation with respect to all other non-exempt employees who received non-discretionary bonuses such as the sign-on bonus that Plaintiff received.

## VIII.  CAUSES OF ACTION

### COUNT I
### Defendant Discriminated Against Plaintiff on the Basis of His Race in Violation of Title VII, 42 U.S.C. § 2000e, et seq.

98.    Plaintiff re-alleges and incorporates by reference paragraphs 1-97 as if fully set forth herein.

99.    Plaintiff was at all times material hereto an employee of Defendant covered by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., prohibiting discrimination or harassment on the basis of race

100.    Defendant is, and at all times material hereto was, an employer within the meaning of 42 U.S.C. § 2000e-b, and as such was prohibited from discriminating against Plaintiff on the basis of race as set forth in 42 U.S.C. § 2000e-2(a).

101.    Plaintiff is African American and is therefore a member of a protected class within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.

102.    Defendant discriminated against Plaintiff on the basis of his race in violation of Title VII by engaging in the conduct outlined above.

103.    Plaintiff's protected status - African American - was a motivating factor for this discriminatory conduct.

104.    Plaintiff's supervisors and Defendant's Human Resources leadership were aware of this overtly discriminatory treatment because they either participated in it or condoned it.

105.    As a proximate result of Defendant's unlawful treatment of Plaintiff, Plaintiff has suffered lost wages, embarrassment, humiliation, and mental anguish, all in an amount to be established at the time of trial. Plaintiff will continue to lose wages until he is reinstated to his previous position as Assistant Shift Manager over the Table Games at Caesar's facility in Danville, Virginia.

106.    Under 42 U.S.C. § 2000e-5, Plaintiff is entitled to recover compensatory damages, punitive damages, attorney fees, costs, and interest.

## COUNT II
### Defendant Discriminated Against Plaintiff on the Basis of His Race in Violation of the Virginia Human Rights Act ("VHRA"), Va. Code Ann. § 2.2-3900, et seq.

107.    Plaintiff re-alleges and incorporates by reference paragraphs 1-106 as if fully set forth herein.

108.    Plaintiff was at all times hereto an employee of Defendant covered by the Virginia Human Rights Act, Va. Code Ann. § 2.2-3900, et seq., prohibiting discrimination or harassment on the basis of race.

109.    Defendant is, and at all times material hereto was, an employer within the meaning of Va. Code Ann. § 2.2-3905 and as such was prohibited from discriminating against Plaintiff on the basis of race as set forth in Va. Code Ann. § 2.2-3905(B).

110.    Defendant violated Va. Code Ann. § 2.2-3905(B) by engaging in the conduct outlined above.

111.    Plaintiff's supervisors and Defendant's Human Resources leadership were aware of this overtly discriminatory treatment because they either participated in it or condoned it.

112.    As a proximate result of Defendant's unlawful treatment of Plaintiff, Plaintiff has suffered lost wages, embarrassment, humiliation, and mental anguish, all in an amount to be established at the time of trial. Plaintiff will continue to lose wages until he is reinstated to his previous position as Assistant Shift Manager over the Table Games at Caesar's facility in Danville, Virginia.

113.    Under Va. Code Ann. § 2.2-3908(B), Plaintiff is entitled to recover compensatory damages, punitive damages, attorney fees, costs, and interest.

## COUNT III
### Hostile Work Environment in Violation of Title VII, 42 U.S.C. § 2000e, et seq.

114.    Plaintiff re-alleges and incorporates by reference paragraphs 1-114 as if fully set forth herein.

115.    Plaintiff was at all times material hereto an employee of Defendant covered by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S. § 2000e, et seq.

116.    Defendant is, and at all times material hereto was, an employer within the meaning of 42 U.S. § 2000e-b and as such was prohibited from creating a hostile work environment against Plaintiff.

117.    By engaging in the acts outlined above, Defendant created a hostile work environment in violation of Title VII.

118.    Defendant's conduct was sufficiently severe to alter Plaintiff's employment conditions, thus creating a hostile work environment.

119.     Despite having actual knowledge regarding Plaintiff's claims of racial discrimination, Defendant failed to take remedial action that would end the harassment.

120.     As a proximate result of Defendant's unlawful treatment of Plaintiff, Plaintiff has suffered lost wages, embarrassment, humiliation, and mental anguish, all in an amount to be established at the time of trial. Plaintiff will continue to lose wages until he is reinstated to his previous position as Assistant Shift Manager over the Table Games at Caesar's facility in Danville, Virginia.

121.     Under 42 U.S.C. § 2000e-5, Plaintiff is entitled to recover compensatory damages, punitive damages, attorney fees, costs, and interest.

**COUNT IV**
**Caesars Terminated Plaintiff for Reporting Discrimination in Violation of Title VII,**
**42 U.S.C. § 2000e-3(a)**

122.     Plaintiff re-alleges and incorporates by reference paragraphs 1-121 as if fully set forth herein.

123.     Plaintiff was at all times material hereto an employee of Defendant covered by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S. § 2000e, et seq., prohibiting retaliation for reporting discrimination on the basis of race.

124.     Defendant is, and at all times material hereto was, an employer within the meaning of 42 U.S. § 2000e-b and as such was prohibited from retaliating against Plaintiff as a result of him opposing unlawful discrimination practices as set forth in 42 U.S. § 2000e-3(a).

125.     103. Plaintiff opposed the unlawful discrimination to which he was subjected on the following occasions:

        a.   Complaining to his supervisor, Ms. Trammell, on May 24, 2023, about Mr. Thyer's comments of "boy" and his bullying and unprofessional behavior;

    b.   Sending Ms. Trammell a text message on June 16, 2023, regarding his frustrations about working with Mr. Thyer;

    c.   Sending Ms. Trammell a text message on July 14, 2023, asking to meet with her and Mr. Schechter regarding a racial incident that occurred with Mr. Thyer;

    d.   E-mailing Mr. Schechter to ask why the July 15, 2023, did not occur;

    e.   Sending an e-mail to Raven Williams on July 19, 2023, describing his frustrations with the situation and asking why he was being punished for reporting discrimination;

    f.   Meeting with Mr. Schechter, Ms. Trammell, and a Human Resources Representative on July 20, 2023, to discuss the racial discrimination to which he was being subjected; and

    g.   Complaining to Mr. Schechter, Ms. Trammell, and the HR Representative about Mr. Thyer's racist behavior during the July 20, 2023, meeting.

126.    After Plaintiff complained about race-based discrimination at Caesars, Defendant retaliated against Plaintiff by terminating his employment.

127.    The individuals who decided to terminate Plaintiff were very much aware of his efforts to oppose discriminatory behavior at Caesars.

128.    As a proximate result of Defendant's retaliation against Plaintiff, Plaintiff has suffered substantial losses in earning and other employment benefits in addition to embarrassment, humiliation, and mental anguish in an amount to be established at the time of trial.

129.    107. Under Title VII, Plaintiff is entitled to recover compensatory damages, punitive damages, attorney fees, costs, and interest, along with reinstatement or front pay in lieu thereof.

## COUNT V
### Caesars Terminated Plaintiff for Reporting Discrimination in Violation of the VHRA, Va. Code Ann. § 2.2-3905

130. Plaintiff re-alleges and incorporates by reference paragraphs 1-129 as if fully set forth herein.

131. As outlined above, Plaintiff opposed one or more practices made unlawful under the Virginia Human Rights Act.

132. In response to Plaintiff's protected activity, Defendant retaliated against him by terminating his employment.

133. The individuals who decided to terminate Plaintiff were very much aware of his efforts to oppose discriminatory behavior at Caesars.

134. As a proximate result of Defendant's retaliation against Plaintiff, Plaintiff has suffered substantial losses in earning and other employment benefits in addition to embarrassment, humiliation, and mental anguish in an amount to be established at the time of trial.

135. Under Va. Code Ann. § 2.2-3908(B), Plaintiff is entitled to recover compensatory damages, punitive damages, declaratory and injunctive relief, attorney fees, costs, and interest, along with reinstatement or front pay in lieu thereof.

## COUNT VI
### Collective Action for Violation of Fair Labor Standards Act, 29 U.S.C. § 203 et seq., Failure to Compensate Overtime at Regular Rate of Pay

136. Named Plaintiff re-alleges and incorporates by reference paragraphs 1-135 as if fully set forth herein.

137. Under 29 U.S.C. § 207(a)(1), Defendant was required to compensate named Plaintiff and other similarly situated class members at a rate not less than half the times their regular rate of pay.

138.    Under the FLSA, nondiscretionary bonuses **must** be calculated into the employee's regular rate of pay when determining their overtime rate.

139.    Named Plaintiff earned $32.50 per hour and was given a $5,000 sign on bonus that, if applicable, Defendant could have required Plaintiff to pay back.

140.    These conditions spanned over a 12-month period.

141.    Because this bonus was nondiscretionary, the $5,000 bonus should have been calculated into Named Plaintiff's minimum wages when determining his overtime rate over the following 12-month period.

142.    Since the bonus was to be paid off over a 12-month period, the $5,000 can be divided into 52 weeks, or $96.15 per week.

143.    Assuming Named Plaintiff worked 40 hours per week, $96.15 divided by 40 hours, equals $2.40/hour.

144.    This $2.40 must be added to Named Plaintiff's regular wages of $32.50/hour.

145.    Therefore, once calculated, Named Plaintiff's **actual** regular rate of pay when factoring in the bonus was $34.90 per hour.

146.    Therefore, Named Plaintiff's overtime rate should have been $52.35.

147.    However, Defendant **only** compensated Named Plaintiff for overtime hours worked at $48.75 because it **failed** to include his bonus into his overtime rate.  (See **Exhibits 6, 7, 8**.)

148.    As a result, Named Plaintiff is entitled to this $3.60/hr. difference for each overtime hour worked, plus an additional amount in liquidated damages.

149.    Moreover, all similarly situated class members who received a sign-on bonus and worked overtime were undercompensated on their overtime wages as well.

150.     Under § 216(b) of the FLSA, Defendant is liable to Named Plaintiff and other class members in the amount withheld, plus an additional amount in liquidated damages.

151.     Under § 216(b) of the FLSA, Defendant is also liable to pay the attorney fees and costs Named Plaintiff and other class members incur pursuing a remedy in this matter.

## COUNT VII

**Rule 23 Class Action for Violations of Virginia Wage Payment Act ("VWPA"), Va. Code Ann. § 40.1-29, et seq.**

152.     Plaintiff re-alleges and incorporates by reference paragraphs 1-151 as if fully set forth herein.

153.     Under the VWPA, Named Plaintiff and other similarly situated class members are entitled to all wages earned.

154.     By violating the FLSA and withholding Named Plaintiff's wages, Defendant also violated the VWPA.

155.     Moreover, because Defendant knowingly withheld these wages, Named Plaintiff and other class members are entitled to triple the amount of wages due.

156.     Under Va. Code Ann. § 40.1-29(J), Named Plaintiff and other class members are also entitled to prejudgment at 8%, along with the attorney fees and costs incurred in pursuing a remedy in this matter.

157.     Under Rule 23 of the Federal Rules of Civil Procedure, Named Plaintiff is entitled to certify an opt-out class action to provide VWPA remedies for all Virginia employees whose wages were withheld in this unlawful manner.

IX.    **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Levar Fowler, prays that judgment be entered in his favor and against the Defendant as follows:

a.    That this Court certify the proposed FLSA collective actions under 29 U.S.C. § 216(b);

b.    That this Court certify the proposed VWPA class actions under Fed. R. Civ. P. 23;

c.    Directing prompt issuance of notice pursuant to 29 Y.S.C. § 216(b) to the FLSA collective, apprising them of the pendency of this action and permitting them to timely assert their rights under the FLSA and pursuant to 29 U.S.C. § 216(b);

d.    Directing prompt issuance of notice pursuant to Fed. R. Civ. P. 23(c)(2) to the VWPA class, apprising them of the pendency of this action and notifying them they must affirmatively opt out of the class if they do not wish to be included in this action;

e.    Declaring Caesars violated the FLSA by failing to incorporate their bonuses into their regular rate of pay and therefore failing to compensate its employees at the appropriate overtime rate;

f.    Declaring that Caesars violated the VWPA by failing to compensate its employees at the appropriate overtime rate and therefore knowingly withholding their wages;

g.    Awarding Named Plaintiff and all others who join the proposed FLSA collective actions damages in the amount of all wages unlawfully withheld, an equal amount in liquidated damages, plus pre-judgment and post-judgment interest, attorney fees, and costs;

h.    Awarding Named Plaintiff and all others who remain in the proposed VWPA class action damages in the amount of wages unlawfully withheld, plus an equal amount in liquidated

damages (or triple damages if Defendant's violations are deemed knowing), at 8%, plus attorney

fees and costs;

      i.      That Plaintiff be reinstated to the Table Games Dual Rate Assistant Shift Manager

position he previously held or be paid an appropriate amount in front pay in lieu of reinstatement;

b. That Defendant pay compensatory damages for all lost wages, bonuses, benefits, and promotions

Plaintiff lost and continues to lose as a result of Defendant's unlawful termination until he is

reinstated as Table Games Dual Rate Assistant Shift Manager at Caesar's facility in Danville,

Virginia;

      j.      That Defendant pay punitive damages in an amount not to exceed $350,000

pursuant to Title VII, 42 U.S.C. § 2000e-2(a) and Va. Code Ann. § 2.2-3908(B) for unlawfully

discriminating against Plaintiff on the basis of his race;

      k.      That Defendant pay punitive damages in an amount not to exceed $350,000

pursuant to Title VII, 42 U.S.C. § 2000e-2(a) and Va. Code Ann. § 2.2-3908(B) for retaliating

against Plaintiff by unlawfully terminating Plaintiff as a result of his efforts to oppose unlawful

discrimination by Caesars;

      l.      That Defendant pay compensatory damages for Plaintiff's unpaid wages in

violation of the FLSA, plus an additional amount as liquidated damages;

      m.      That Defendant pay compensatory damages for Plaintiff's unpaid wages in

violation of the VWPA, plus triple the amount as liquidated damages for knowingly violating the

VVWPA;

      n.      That Plaintiff be awarded all reasonable attorney fees and costs, pursuant to Title

VII, 42 U.S.C. § 2000e-5, Va. Code Ann. § 2.2-3908(B), 29 U.S.C. § 216(b), and Va. Code Ann.

§ 40.1-29(J);

o.     That Plaintiff be awarded post-judgment interest; and

p.     That the Court award such other and further relief as just, equitable, and proper

**JURY TRIAL DEMANDED ON ALL ISSUES SO TRIABLE.**

August 11, 2025                                  `                  Respectfully Submitted,

**LEVAR FOWLER, on behalf of himself
and all others similarly situated**

By:   /s/ Dylan Craig
      Dylan Craig
      *Counsel for Plaintiff*

Christopher E. Collins (VSB No. 90632)
Mia Yugo (VSB No. 92975)
Dylan Craig (VSB No. 100709)
**YUGO COLLINS, PLLC**
25 Franklin Road, SW
Roanoke, Virginia 24011
Tel: (540) 861-1529
Direct: (540) 855-4791
chris@yugocollins.com
mia@yugocollins.com
dylan@yugocollins.com

*Counsel for Plaintiff*