**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION**

| | |
|---|---|
| **LEVAR FOWLER, on behalf of himself and others similarly situated,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| **v.** : | **Civil Action No.: 4:24-CV-00029-TTC-CKM** |
| : | |
| **CAESARS VIRGINIA, LLC,** : | |
| : | |
| **Defendant.** : | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
PARTIALLY DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND MOTION
TO STRIKE CLASS AND COLLECTIVE ACTION ALLEGATIONS**

Pursuant to FED. R. CIV. P. 12(b)(6), 12(f), 23(c), and 23(d), and Local Civil Rule 11, Defendant Caesars Virginia, LLC[1] ("Defendant" or "Caesars"), by counsel, respectfully moves to partially dismiss and/or strike certain claims and allegations in the First Amended Complaint (the "FAC") (ECF No. 20) filed by Plaintiff Levar Fowler ("Plaintiff" or "Fowler").[2]  In support thereof, Defendant states as follows:

## I.  INTRODUCTION & SUMMARY OF THE ARGUMENT

The FAC suffers from multiple pleading defects that are fatal to Plaintiff's claims. Specifically, Plaintiff alleges in Counts VI and VII that his former employer underpaid him and

---

[1]  Caesars Virginia, LLC is not the proper entity for this suit as Plaintiff was employed by Caesars Resort Collection, LLC d/b/a Caesars Virginia during the relevant timeframe.

[2]  The filing of this Motion tolls the deadline to file an Answer to not only the counts that are the subject of this Motion, but also those that are not being challenged.  *See e.g., Maass v. Lee*, 189 F. Supp. 3d 581, 587 (E.D. Va. 2016) ("[T]he filing of a Rule 12, FED. R. CIV. P., motion for partial dismissal postpones the deadline for filing an answer to all claims, not just those subject to the motion."); *Kimbler v. Spear,* No. 1:16CV00047, 2017 WL 1337276, at *2 (W.D. Va. Apr. 11, 2017).

other Caesars employees for overtime hours in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, *et seq.,* and the Virginia Wage Payment Act (VWPA), Va. Code §§ 40.1-29, *et seq.*, by purportedly failing to include a $5,000 sign-on bonus that he was promised and received in the first 30 days of his employment into his regular rate of pay.  *See* FAC at ¶¶ 136-157.  These claims are baseless and must be dismissed or, in the alternative, stricken in their entirety, for several reasons.

First, Plaintiff's "failure to compensate overtime at regular rate of pay" claim (Count VI) must be dismissed as time-barred.  Plaintiff failed to pursue this claim within two years after the cause of action accrued and, thus, failed to initiate his action within the FLSA's two-year statute of limitations.  Moreover, the FAC lacks any factual allegations that plausibly state any willful FLSA violation subject to a broader three-year statute of limitations.

Second, even assuming *arguendo* that his Count VI claim is not time-barred (it is), Plaintiff nonetheless fails to sufficiently plead any claim for unpaid overtime upon which relief may be granted under either federal or state law.  And because Plaintiff's individual claim fails as a matter of law, he is foreclosed from pursuing relief on behalf of other similarly situated individuals.  Dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules") is, therefore, merited.

Third, the putative class and collective action allegations must necessarily also be dismissed or, in the alternative, stricken as such allegations are themselves deficient in several ways.  Plaintiff's putative class allegations must be dismissed because the VWPA does not permit class action proceedings under Rule 23, but instead provides a limited private right of action on an opt-in, *collective* basis consistent with FLSA procedures.  In addition, Plaintiff fails to plead, and cannot establish, multiple requirements for class action treatment.  Finally, Plaintiff's FLSA

putative collective allegations should be dismissed or stricken because he cannot show that his proposed putative collective is similarly situated.

For these reasons, Defendant respectfully requests an Order dismissing or, in the alternative, striking with prejudice, Plaintiff's FLSA and VWPA claims under Count VI and Count VII, respectively, of the FAC.

## II.    RELEVANT ALLEGATIONS[3]

On May 1, 2023, Fowler began his employment with Caesars as a Table Games Dual Rate Assistant Shift Manager/Supervisor.  *See* FAC at ¶¶ 40-41.  Upon hire, Caesars provided Fowler a $5,000 sign-on bonus, which was governed by the terms of his offer of employment letter with Caesars.  *Id.* at ¶¶ 87-88 (citing ECF No. 20-1 ("Pl.'s Ex. 5")).  Per Fowler's offer letter terms, the $5,000 sign-on bonus was "payable within [his] first 30 days of employment[.]"  *Id.*

On July 15, 2023, *i.e.*, within two-and-a-half months of Fowler's hiring, both a Caesars Dealer and a casino guest complained about Fowler's behavior.  *Id.* at ¶¶ 72-73.  Following a prompt and thorough internal investigation, Caesars terminated Fowler's employment on July 21, 2023.  *Id.* at ¶¶ 82-85.

Over two years later, on August 13, 2025, Plaintiff amended his Complaint to assert both individual and putative class and collective claims against Caesars under the FLSA and the VWPA. *See id.* at ¶¶ 136-157.  These newly added claims center around Fowler's contention that Caesars was required to allocate his $5,000 sign-on bonus across each and every pay period into his regular rate of pay for overtime premiums, including: (1) June 2, 2023 to June 15, 2023, wherein he

---

[3]  Defendant denies the factual allegations pled by Plaintiff in the FAC.  However, on a motion to dismiss, a moving party must accept the opposing party's allegations of fact as stated, regardless of veracity, which Defendant has done here.  Moreover, Defendant summarizes in this section only the allegations pled in Plaintiff's FAC that are subject to this Motion.

worked 1.25 overtime hours; (2) June 16, 2023 to June 29, 2023, wherein he worked 3.75 overtime

hours; and (3) June 30, 2023 to July 13, 2023, wherein he worked seven overtime hours.  *Id.* at

¶¶ 90-96; *see also* ECF Nos. 20-2 ("Pl.'s Ex. 6"), 20-3 ("Pl.'s Ex. 7"), and 20-4 ("Pl.'s Ex. 8")

(Fowler's pay slips for these periods).  Notably, none of the foregoing pay slips on which Plaintiff

bases his FLSA and VWPA claims involve pay periods during the first 30 days of his employment

with Caesars.  *See id.*  Further, Plaintiff does not allege in his FAC that he worked any overtime

hours the first 30 days of his employment, *i.e.*, between May 1-30, 2023.  *See generally id.; see

also id.* at ¶ 40.

## III.    APPLICABLE LEGAL STANDARDS

### A.    Motion to Dismiss under FED. R. CIV. P. 12(b)(6)

Rule 12(b)(6) provides for dismissal when an action fails to state a claim upon which relief

can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v.

Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Id.* at 678. To that end, "the court need not

accept the [plaintiff's] legal conclusions drawn from the facts, nor need it accept as true

unwarranted inferences, unreasonable conclusions, or arguments." *Wahi v. Charleston Area Med.

Ctr., Inc.*, 562 F.3d 599, 616 n. 26 (4th Cir. 2009).

On a motion to dismiss, courts can also "consider documents expressly referenced and

relied upon in the complaint without transforming that motion into one for summary judgment."

*Stewart v. Raimondo*, No. 1:23CV1525(LMB/IDD), 2024 WL 150229, at *3 (E.D. Va. Jan. 12,

2024), *appeal dismissed*, No. 24-1239, 2024 WL 3201145 (4th Cir. June 27, 2024); *see also Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) ("We may also consider documents attached to the complaint, … as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.").

### B.    Motion to Strike under FED. R. CIV. P. 12(f) and 23(d)

A court also may strike class or collective actions from a pleading. *See* FED. R. CIV. P. 12(f)(2); FED. R. CIV. P. 23(d)(1)(D) (providing courts may issue orders that "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly"); *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (stating, "[s]ometimes the issues are plain enough from the pleadings" to determine that a case is inappropriate for class relief). Many district courts within the Fourth Circuit have stricken class allegations at the pleadings stage, and the Fourth Circuit has affirmed orders denying certification before discovery. *See e.g.*, *Strange v. Norfolk & W. Ry. Co.*, 809 F.2d 786 (4th Cir. 1987) (unpublished table decision) (affirming pre-discovery decision that granted defendant's motion for non-certification of a class and dismissed Rule 23 claims); *Morgan v. Caliber Home Loans, Inc.*, No. 8:19CV02797, 2022 WL 16964705, at *2 (D. Md. Nov. 16, 2022) (granting motion to strike class claims, relying on *Strange*, and noting that if "class treatment on the face of the complaint leaves little doubt that a class action is not viable, the court should strike the class allegations") (internal cites omitted).

## IV.    ARGUMENT

### A.    The Court May Consider Plaintiff's Pay Slips at the Motion-to-Dismiss Stage.

As an initial matter, the Court may consider Fowler's pay slips when analyzing his FLSA and VWPA claims (Counts VI and VII) without converting this Motion into one for summary

judgment.  Plaintiff's claims are based upon the allegation that Caesars failed to include his $5,000 sign-on bonus into his overtime rate.  *See e.g.,* FAC at ¶¶ 90, 97, 136-157.  Plaintiff specifically refers to, and encloses as exhibits to his amended pleading, (1) his offer letter, which outlines the terms of his $5,000 sign-on bonus, along with (2) his biweekly pay slips from June 2, 2023 to July 13, 2023.  *See* Pl.'s Exs. 5-8.  As such records are central to Plaintiff's claims and have been placed directly at issue by virtue of the allegations in the FAC, the Court may properly consider them in conjunction with this Motion.  *See e.g., Darcangelo v. Verizon Commcn's, Inc.,* 292 F.3d 181, 195, n.5 (4th Cir. 2002) (considering ERISA plan document in ruling on a 12(b)(6) motion because the complaint referenced the agreement); *Koenig v. McHugh,* No. 3:11CV00060, 2012 WL 1021849, at *4 (W.D. Va. Mar. 26, 2012) (considering a document to which plaintiff referred in, but did not attach to, her complaint when ruling on defendant's 12(b)(6) motion).

**B.    Plaintiff's Individual FLSA and VWPA Claims (Counts VI and VII) Must Be Dismissed As A Matter of Law.**

**1.    Plaintiff's "Failure to Compensate Overtime at Regular Rate of Pay" Claim (Count VI) Is Time Barred by the FLSA's Statute of Limitations.**

Under 29 U.S.C. § 255(a), "[o]rdinary violations of the FLSA are subject to" a two-year statute of limitations.  *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 135 (1988).  Only in extraordinary cases, where a plaintiff pleads and proves that the employer's violation was "willful," will the limitations period extend to three years. *Id.; see also id*. at 133 (stating, willfulness exists only if the employer "knew or showed reckless disregard" for the possibility that the FLSA prohibited its actions). The limitations period begins to run after the cause of action accrues, and "[a] claim for unpaid compensation under the FLSA accrues at the end of each regular workday." *Deressa v. Gobena*, No. 1:05CV1334(JCC), 2006 WL 335629, at *3 (E.D. Va. Feb. 13, 2006).

In Count VI of the FAC, Plaintiff alleges Defendant violated the FLSA by failing to "include his [$5,000 sign-on] bonus into his overtime rate" during three pay periods spanning from June 2, 2023 to July 13, 2023.  FAC at ¶ 147 (citing Pl.'s Exs. 6-8); *id.* at ¶¶ 90-96.  Plaintiff further alleges in his FAC that Caesars terminated his employment on July 21, 2023.  *See id.* at ¶¶ 82-85. Notably, Plaintiff does ***not*** raise any allegations in his FAC that Caesars willfully violated the FLSA when it offered $5,000 sign-on bonuses to him or other newly hired employees.  *See generally id.*  As such, Plaintiff fails to allege any facts sufficient to establish a plausible claim for a willful violation of the FLSA.  *See* 29 U.S.C. § 255(a).  Consequently, the latest possible date for the statute of limitations to have expired on Plaintiff's FLSA claim is July 21, 2025, *i.e.,* two years after his July 21, 2023 termination date.  Plaintiff did not raise any FLSA claim against Caesars, however, until August 13, 2025.  *See generally* ECF No. 20.  Accordingly, Plaintiff's Count VI claim must be dismissed as untimely.

### 2.    Plaintiff Fails to State an Unpaid Overtime Claim Upon Which Relief Can Be Granted under the FLSA and/or the VWPA.

Assuming *arguendo* that Plaintiff timely filed his "failure to compensate overtime at regular rate of pay" claim under the FLSA (he did not), he still fails to state a claim upon which relief can be granted.  *See* FAC at ¶¶ 136-157.  As demonstrated in detail below, both Counts VI and VII are subject to dismissal pursuant to Rule 12(b)(6).

Plaintiff alleges – and the offer letter attached and incorporated by reference into his FAC states – that his $5,000 sign-on bonus was "payable within [his] first 30 days of employment[,]" which began on May 1, 2023.  FAC at ¶¶ 40, 88; Pl.'s Ex. 5.  Plaintiff further alleges that Caesars violated the FLSA and the VWPA because such sign-on bonus was "nondiscretionary" and must be included in his regular rate of pay.  FAC at ¶ 141; *see also id.* at ¶ 36 (citing 29 C.F.R. § 778.211); *id.* at ¶ 154 (alleging, a violation of the FLSA also equates to a VWPA violation).

Governing FLSA regulations confirm that Plaintiff's claim fails as a matter of law. Specifically, 29 C.F.R. § 778.209 provides two methods of computing overtime pay for bonus earnings and expressly states that, "[*n*]*o difficulty arises in computing overtime compensation if the bonus covers only one weekly pay period.*" 29 C.F.R. § 778.209(a) (emphasis added). Plaintiff is amply aware that he received the $5,000 sign-on bonus as a lump sum payment during his first week of employment at Caesars, consistent with the terms of his offer letter. *See* **Exhibit 1** (Fowler's April 21, 2023 - May 4, 2023 pay slip); *see also Koenig,* 2012 WL 1021849, at *5-6 (considering a document to which plaintiff referred in, but did not attach to, her complaint when ruling on defendant's 12(b)(6) motion). Fowler plainly did not work any overtime between May 1-4, 2023, and the FAC does not allege otherwise. *See generally* ECF No. 20; *see also* Ex. 1 (showing 32.00 hours worked between April 21, 2023-May 4, 2023). Consequently, "no difficulty arises" in concluding that Caesars complied with both the FLSA and the VWPA. 29 C.F.R. § 778.209(a); *see also* DOL Fact Sheet #56C, *available at:* https://www.dol.gov/agencies/whd/fact -sheets/56c-bonuses (last viewed Aug. 22, 2025) (providing example of how to calculate overtime where, as here, "[a] non-exempt employee is paid [a particular nondiscretionary bonus] . . . in a particular week").

In an obvious effort to skirt these glaring deficiencies in reasoning, Plaintiff and his counsel have conspicuously omitted Fowler's paystub from the first week of his employment. *See generally* FAC. The fatal flaw in Plaintiff's wage claims, however, is that the three paystubs referred to and enclosed as exhibits to his amended pleading each involve pay periods falling exclusively **after** the end of his first 30 days of employment with Caesars, *i.e.*, **after** the period in which the sign-on bonus was promised and paid to Fowler. *See id.* at ¶¶ 91-96 (citing Pl.'s Exs. 6-8); *see also* Pl.'s Ex. 5 (stating, the "sign-on bonus will be payable **within** [his] first 30 days of

employment") (emphasis added).   These pay periods in June and July 2023 are thus legally

irrelevant.   Moreover, Plaintiff does not allege in his FAC that he worked any overtime hours

during the first 30 days of his employment, *i.e.,* between May 1, 2023 and May 31, 2023.   *See*

*generally* FAC.   As such, Plaintiff fails to state an unpaid overtime claim under either the FLSA

or the VWPA, and Counts VI and VII should be dismissed.   *See* Pl.'s Exs. 5-8; *see also Peterson*

*v. Black Body Corp.,* No. 3:23CV00034, 2024 WL 3272548, at *11 (W.D. Va. June 28, 2024)

(finding plaintiff's proposed FLSA claim futile because "there can be no FLSA cause of action

'where … hours do not rise above the overtime threshold'") (citing *Trejo v. Ryman Hosp. Props.,*

*Inc.,* 795 F.3d 442, 448 (4th Cir. 2015)).

**C.    Plaintiff's Putative Class and Collective Action Allegations Should Be
Dismissed or, In The Alternative, Stricken.**

If the Court dismisses Plaintiff's individual FLSA and VWPA claims, then the putative

class and collective action allegations must necessarily also be dismissed.   Regardless, the FAC

does not plausibly allege that Plaintiff can meet the requirements for a collective action under the

FLSA or a VWPA class action under Rule 23.   Plaintiff's class and collective action allegations

are deficient in several ways and should therefore be dismissed or, in the alternative, stricken.

**1.    Plaintiff Lacks Standing to Represent Any Putative Class or Collective
Under the FLSA or the VWPA Because He Fails to Allege any Injury-
in-Fact.**

This Court's jurisdiction is limited to actual "Cases" and "Controversies."   U.S. CONST.

ART. III, § 2, cl. 1.   Where, as here, Plaintiff seeks to pursue a putative class or collective action,

Fourth Circuit courts analyze standing "based on the allegations of personal injury made by the

named plaintiff[]." *Beck v. McDonald*, 848 F.3d 262, 269-70 (4th Cir. 2017) (citing *Doe v. Obama*,

631 F.3d 157, 160 (4th Cir. 2011)).   This is because a named plaintiff "'must allege a distinct and

palpable injury to himself, even if it is an injury shared by a large [putative] class [or collective]

of other possible litigants.'" *Zaycer v. Sturm Foods, Inc.*, 896 F. Supp. 2d 399, 408 (D. Md. 2012)

(quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).  In other words, "[t]hat a suit may be [filed

as] a class [or collective] action . . . adds nothing to the question of standing[;]" rather, the named

plaintiff "must allege and show that [*he*] *personally* ha[s] been injured, not that injury has been

suffered by other, unidentified members" of the putative class or collective he seeks to represent.

*Lewis v. Casey*, 518 U.S. 343, 357 (1996) (emphasis added) (internal quotes omitted); *see also*

*Spokeo v. Robins*, 578 U.S. 330, 338 n.6 (2016) (same) (citing *Simon v. Eastern Ky. Welfare Rights*

*Organization*, 426 U.S. 26, 40, n. 20 (1976) (quoting *Warth*, 422 U.S. at 502)).

Here, Plaintiff improperly seeks to represent "all other non-exempt employees who

received non-discretionary bonuses such as the sign-on bonus that Plaintiff received."  FAC at

¶ 97.  Nevertheless, and as discussed in detail above, Plaintiff fails to sufficiently allege in his FAC

that he *personally* has been injured by Caesars or worked any overtime hours during the first 30

days of his employment.  Consequently, Plaintiff has not plausibly alleged any injury in fact as

required by *Spokeo*, 578 U.S. at 338 n.6, and its progeny.  *See* **Section IV(B)(2)**, *supra*.  Because

Plaintiff individually lacks standing, it follows logically that he cannot pursue standing on behalf

of a putative class or collective.  *See e.g., Beck*, 848 F.3d at 270 ("Without sufficient allegation of

harm to the named plaintiff in particular, plaintiffs cannot meet their burden of establishing

standing.") (internal quotes omitted). So, too, Plaintiff cannot represent the interests of other

individuals who received other "non-discretionary bonuses" that he did *not personally* receive.

*See e.g.*, *Abron v. Black & Decker, Inc.*, 654 F.2d 951, 954 (4th Cir. 1981) ("[A] class [or

collective] action may be maintained only by persons 'possess[ing] *the same interest and*

suffer[ing] *the same injury*' as the class [or collective] members" they seek to represent) (quoting

*E. Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)) (emphasis added).

Accordingly, Plaintiff's putative class and collective action allegations related to these "other non-exempt employees" should be stricken.

> **2.    Plaintiff Cannot Use Rule 23 to Expand the VWPA's Private Right of Action Beyond the Rights Provided by the Statute.**

As discussed in detail below, the class allegations contained in Count VII of the FAC should be dismissed because the VWPA does not allow class proceedings pursuant to Rule 23. Instead, the VWPA only authorizes opt-in collective actions consistent with the provisions of the FLSA and its written opt-in consent requirement – not opt-out class actions, as under Rule 23. Plaintiff's VWPA Rule 23 class allegations should therefore be dismissed.

> ### a)    *Collective and Class Action Procedures*

The FLSA is a federal law that sets forth, *inter alia*, overtime requirements for employees. *See* 29 U.S.C. §§ 201, *et seq.* Section 216(b) of the FLSA creates a private right of action for an employee to sue on behalf of himself and "other employees similarly situated." 29 U.S.C. § 216(b). Employees who wish to participate in a FLSA litigation must affirmatively opt in to join the lawsuit. *Id.* The FLSA explicitly states, "[n]o employee shall be a party plaintiff to any such action ***unless he gives his consent in writing to become such a party and such consent is filed*** in the court in which such action is brought." *Id.* (emphasis added); 7B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1807 ("Collective Actions Under the Fair Labor Standards Act") (3d ed. 2005) (Because "every plaintiff who opts in to a collective action has party status … although the original plaintiffs in a collective action may pursue the suit on a representative basis, each FLSA claimant has the right to be present in court to advance his or her own claim.").

Collective actions under the FLSA substantively differ from class action proceedings under Rule 23 in multiple ways. First, in contrast to the FLSA's *opt-in* scheme, Rule 23 permits an individual to sue on behalf of a class so long as certain conditions are satisfied. *See* Fed. R. Civ.

P. 23(a)-(b). Members of a certified Rule 23 class action are also bound by the results of the litigation unless the member affirmatively *opts out* of the litigation. *See e.g.,* FED. R. CIV. P. 23(c)(2)(B)(v).  Further, the Supreme Court has recognized that the opt-in requirement of the FLSA makes such collective actions "fundamentally different" from Rule 23 class actions. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) (Rule 23 class actions "are fundamentally different from collective actions under the FLSA"); *see also e.g., Stacy v. Jennmar Corp. of Virginia, Inc.*, 342 F.R.D. 215, 222 (W.D. Va. 2022) (discussing Rule 23 and FLSA collective actions and accurately observing the "stark differences between the two procedures"); *accord In re Citizens Bank, N.A.*, 15 F.4th 607, 612 (3d Cir. 2021) ("This opt-out opportunity under Rule 23 stands in sharp contrast to the FLSA's opt-in requirement, and is the most conspicuous difference between the FLSA collective action device and a class action under Rule 23.") (internal cites omitted).

Second, the settlement approval process for FLSA claims differs from Rule 23 class actions, where courts must take a more active role to protect the due process rights of individuals who can be bound by a court's decision without actively engaging in the litigation.  *See e.g., Bell v. Brockett*, 922 F.3d 502, 510-11 (4th Cir. 2019); *Acuna v. So. Nev. T.B.A. Supply Co.*, 324 F.R.D. 367, 379 (D. Nev. 2018); *see also Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143(ENV)(RER), 2011 WL 754862, at *5 (E.D.N.Y. Feb. 18, 2011) ("The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement.").

Third, statutes of limitations apply differently in collective and class actions. *See* 7B Charles Alan Wright & Arthur R. Miller, FED. PRAC. & PROC. CIV. § 1807 ("Unlike Rule 23 class actions in which the statute of limitations will be tolled for all class members until the class-

certification decision has been made, or until an individual class member opts out, the statute of limitations for a plaintiff in a collective action will be tolled only after the plaintiff has filed a consent to opt in to the collective action.").

Fourth, collective and class actions have different evidentiary and legal standards. *See e.g., Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 131 (3d Cir. 2018) ("Rule 23 class certification and FLSA collective action certification are fundamentally different creatures."); *Andreana v. Virginia Beach City Pub. Sch.*, No. 2:17CV574, 2019 WL 1756530, at *2 n.1 (E.D. Va. Apr. 19, 2019) (declining to look to Rule 23 standards in an ADEA collective action because of the important fundamental differences between class and collective actions).

Given these fundamental differences, FLSA collective actions and Rule 23 class actions "are mutually exclusive and irreconcilable." *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir. 1975); *see also Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 561, n.6 (E.D. Va. 2006) (citing *LaChapelle*, 513 F.2d at 286, and recognizing, "there is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by the FLSA § 16(b)"). As such, courts have long recognized that these differences foreclose FLSA claims from being brought as Rule 23 class actions. *See e.g., Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1248 (11th Cir. 2003). Similarly, it has long been recognized that Rule 23 cannot be used to bring class claims under other statutes that incorporate the FLSA's collective action mechanism. *See e.g.*, *LaChapelle*, 513 F.2d at 289.

b)      *VWPA Collective Action Procedures*

In 2020, the Virginia General Assembly amended the VWPA to provide a private right of action for individuals to seek allegedly unpaid wages.[4]  In enacting this amendment, the legislature explicitly chose to follow FLSA guidance for wage and hour legislation.  Specifically, the statute allows an employee to "bring an action individually, jointly, with other aggrieved employees, or on behalf of similarly situated employees ***as a collective action consistent with the collective action procedures of the [FLSA], 29 U.S.C. § 216(b)***, against the employer in a court of competent jurisdiction to recover payment of the wages[.]" Va. Code § 40.1-29(J) (emphasis added).

It is no accident that the VWPA adopted the FLSA's provisions in lieu of the broader Rule 23 provisions.  Virginia has long declined to adopt a class action statute or Rule 23 equivalent. *See also Moore v. Nat'l Wildlife Fed'n*, No. 10884, 1987 WL 488717, at *1 (Loudoun Cnty. Cir. Ct. Sept. 11, 1987) ("Virginia has no class action statute or rule similar to Rule 23").  Although the General Assembly attempted to create a class action procedure governed by Rule 23 requirements when it passed House Bill 418 and Senate Bill 329 in early 2024, Governor Glenn Youngkin vetoed those bills on March 14, 2024. *See* https://legacylis.virginia.gov/cgi-bin/legp604.exe?241+sum+HB418; *see also* Youngkin Veto Statement to House Bill 418 ("Commerce is based on a legal environment that maintains fairness. Excessive tort liabilities and the threat of litigation expenses can force businesses to close their doors, imperiling economic growth. Achieving a balanced legal system means addressing the concerns of both litigants and businesses in tandem."), *available at:* https://www.governor.virginia.gov/media/governorvirginia

---

[4]  Prior to 2020, employees who believed their employer violated the VWPA were only authorized to file a claim with the Virginia Department of Labor and Industry.  *See* Va. Code 40.1-29 (2019), a copy of which is attached hereto as **Exhibit 2**.

gov/governor-of-virginia/pdf/VETOES.pdf (last viewed Aug. 27, 2025). The law is therefore clear that a Rule 23 class action cannot be maintained in Virginia state courts.

### c)    *Plaintiff's Rule 23 VWPA Claim Must Be Dismissed.*

Plaintiff cannot use Rule 23 to escape the collective action requirements embedded in the VWPA and create broader substantive rights than those available in Virginia state court. Federal courts apply state substantive law and federal procedural law in federal diversity cases like this one. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Although the Rules provide general rules of practice and procedure in federal courts, the Rules Enabling Act makes clear that these provisions may "*not* abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2072(b) (emphasis added). Here, allowing Plaintiff to bring his state law claim as a Rule 23 class action in federal court would improperly create a new substantive right, in violation of the Rules Enabling Act. As previously stated, the FLSA's unique opt-in mechanism for individuals seeking to recover unpaid has been unambiguously adopted by the Virginia General Assembly and expressly incorporated into the VWPA. Plaintiff cannot abridge or bypass this substantive right by applying Rule 23 to bypass the opt-in requirements.

Courts have previously recognized that opt-in provisions are substantive rights that cannot be altered by federal rules. In *Hine v. OhioHealth Corp.*, 680 F. Supp. 3d 861 (S.D. Ohio 2023), for example, another federal court held that Rule 23 violated the Rules Enabling Act when applied to an Ohio wage statue containing an opt-in provision. The *Hine* Court explained, "the Ohio opt-in mechanism confers a right on employee plaintiffs to not have their substantive rights litigated and released without their affirmative consent, and application of [] Rule 23 would abridge that right." *Id.* at 868-69.

Similarly, in *Driscoll v. George Washington Univ.*, 42 F. Supp. 3d 52 (D.D.C. 2012), the Court concluded that a state law opt-in provision was substantive and that applying Rule 23's opt-out provision would violate the Rules Enabling Act. The *Driscoll* Court explained the state law "provides that employees' claims can only be litigated where the employees have affirmed their intent to be bound, and it establishes that employers have a right not to be sued in representative actions absent each plaintiff employee's consent." *Id.* at 62; *see also In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 416 (S.D.N.Y. 2011) ("This statute provides a procedure that is 'so bound up with the state-created right or remedy that it defines the scope of that substantive right or remedy.'") (internal quotes omitted).

Defendant recognizes there are district court decisions in this circuit – none of which is binding on this Court – relying on *Shady Grove Orthopedic Associates v. Allstate Ins. Co.*, 559 U.S. 393 (2010), to conclude that the opt-in provision is procedural and that, notwithstanding the VWPA's overt adoption of the FLSA's opt-in mechanism, VWPA claims can be brought on a class basis pursuant to Rule 23. *See Midkiff v. Anthem Companies., Inc.*, No. 3:22CV417, 2024 WL 4057579, at *8 (E.D. Va. Sept. 5, 2024); *Hatcher v. Cnty. of Hanover*, No. 3:23CV325, 2024 WL 3357839, at **2-3 (E.D. Va. July 10, 2024); *Glennon v. Anheuser-Busch, Inc.*, No. 4:21CV 141, 2022 WL 18937383, at **3-4 (E.D. Va. Sept. 22, 2022). However, Defendant respectfully urges this Court to reject these decisions. *See also Stalvey v. Am. Bank Holdings, Inc.*, No. 4:13CV 714, 2013 WL 6079320, at **3-4 (D.S.C. Nov. 13, 2013) (state statutes that created an individual private right of action for certain consumer laws, but restricted representative actions, could not be altered by federal court to permit representative action).

In *Shady Grove*, there was a direct conflict between Rule 23 and a state statute prohibiting class actions in suits seeking penalties or statutory minimum wages, and the "evidence of the New

York Legislature's purpose [was] pretty sparse." 559 U.S. at 395, 403. Here, by contrast, there is no serious doubt about the Virginia General Assembly's intent: The legislature consciously and explicitly adopted the "***collective action*** [procedures] ***consistent with the collective action procedures of the [FLSA]***, *29 U.S.C. § 216(b)*," to govern VWPA claims. *See supra*, at 14-15. The legislative history is similarly clear: The General Assembly's stated intent was to "keep [Virginia law] in line with federal law" – *i.e.*, the FLSA. *See* Va. S. Com. And Lab. Comm. (Feb. 22, 2021) (testimony of Del. Mike Mullin) at 19:37-21:16, *available at:* https://virginia-senate. granicus.com/MediaPlayer.php?view_id=3&clip_id=4153. This Court is, therefore, not in a *Shady Grove* situation where the Court stated "[w]e cannot contort [Rule 23's] text, even to avert a collision with state law that might render it invalid." *Shady Grove,* 556 U.S. at 406. Rather, the VWPA can be interpreted to exist in a parallel, non-contradictory plane from Rule 23, consistent with the clear intent of the Virginia legislature.

The contrary decisions from other district courts fail to adequately address this issue and the significant differences between the FLSA's opt-in and Rule 23's opt-out schemes. They also fail to meaningfully address the substantive differences in the rights and obligations of collective and class members, as well as employers seeking to defend themselves from such claims. And, most fundamentally, they ignore the text enacted by the Virginia legislature, which expressly linked the limited private right of action created to the FLSA. They therefore create an untenable situation in which employers are subject to state law claims in federal courts despite the fact those same claims are foreclosed in state court and under federal law. Accordingly, this Court should reject that approach and dismiss the Rule 23 claims in this case.

3.    **Plaintiff's Rule 23 Class Claims Must Be Dismissed for Failure to Establish Commonality, Predominance, and/or Superiority.**

a)    *Rule 23 Sets Detailed Requirements for Class Treatment.*

Plaintiff's Rule 23 class claim further fails because he cannot satisfy the requirements applicable to any Rule 23 action. An individual may seek to serve as a representative party for a Rule 23 claim if they establish the following four prerequisites: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* FED. R. CIV. P. 23(a). A plaintiff seeking to certify a class under Rule 23(b)(3) must further show that questions of law or fact common to class members predominate over any questions affecting only individual members (often referred to as the "predominance" requirement), and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy (often referred to as the "superiority" requirement). *See* FED. R. CIV. P. 23(b)(3).

The commonality inquiry:

> focuses on the relationship class members have to each other qualitatively, not quantitatively. Although commonality requires only the presence of a single common question, not just any common question will do. Instead, a plaintiff must 'demonstrate that the class members have suffered the same injury,' which is a shared injury-dependent upon a 'common contention.' 'That common contention, moreover, must be of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.' In other words, a plaintiff must demonstrate that a classwide proceeding has the capacity 'to generate common answers apt to drive the resolution of the litigation.'

*In re NII Holdings, Inc. Sec. Litig.*, 311 F.R.D. 401, 406 (E.D. Va. 2015) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011)) (cleaned up and citations omitted). The Court further noted that, "the commonality inquiry tends to merge into the

typicality inquiry," which requires a plaintiff to "show that [his] 'claims or defenses … are typical of the claims or defenses of the class.'" *Id*. (quoting FED. R. CIV. P. 23(a)(3)).

The "predominance requirement is similar in focus albeit 'far more demanding' than Rule 23(a)'s commonality requirement." *Id*. at 408 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997)).  In assessing predominance, "courts must concentrate on the issue of liability rather than damages," and "if resolution of the liability issue 'turns on a consideration of the individual circumstances of each class member,' certification under Rule 23(b)(3) is inappropriate." *Id*. (quoting *Thorn v. Jefferson-Pilot Life Ins.*, 445 F.3d 311, 319 (4th Cir. 2006)). Put otherwise, a plaintiff does not establish predominance "[w]here the court must engage in 'substantial and individualized inquiries for each [putative] class member." *Dykes v. Portfolio Recovery Assocs., LLC*, No. 1:15CV110, 2016 WL 346959, at *2 (E.D. Va. Jan. 28, 2016) (quoting *Paulino v. Dollar Gen. Corp.*, 2014 WL 1875326, at *6 (N.D. W.Va. May 9, 2014)).

Further, superiority requires that use of a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).  The superiority analysis is highly fact-specific based on the circumstances of each case, and "[t]he rule requires the court to find that the objectives of the class-action procedure really will be achieved." *Chittick v. Freedom Mortg. Corp.*, No. 1:18cv01034, 2021 WL 5326407, at *8 (E.D. Va. May 2, 2021) (quoting *Stillmock v. Weis Mkts., Inc.*, 385 F. App'x 267, 274 (4th Cir. 2010)) (internal quotes omitted).  Superiority is not satisfied where certifying a purported class does not "serve the interest of judicial economy." *Branch v. Gov't Emps. Ins. Co.*, 323 F.R.D. 539, 553 (E.D. Va. 2018).  For example, "'[t]he potential efficiencies of a class action are not realized where an individual assessment of each putative class member's claims must be made.'" *Henderson v. Corelogic Nat'l Background Data, LLC*, No. 3:12CV97, 2016 WL 4611570, at *12 (E.D. Va. Sept.

2, 2016) (quoting *Klotz v. Trans Union, LLC*, 246 F.R.D. 208, 217 (E.D. Pa. 2007)). Nor does superiority exist when the "managerial burden" of numerous "mini-trials" on multiple issues would "eviscerate the efficiencies that classwide adjudication might otherwise afford." *Ganesh, L.L.C. v. Comput. Learning Ctrs., Inc.*, 183 F.R.D. 487, 491 (E.D. Va. 1998) (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 241-42 (1988)).

            **b)**      **While Plaintiff's Failure to Meet Even One of the Rule 23 Requirements is Fatal to His Class Allegations, His FAC Fails to Meet Multiple Requirements.**

Plaintiff's class allegations in Count VII of the FAC should be dismissed because Plaintiff fails to show, at a minimum, commonality, predominance, and/or superiority. To start, the mere fact that all of these individuals worked for Caesars is not enough to meet these requirements. *See e.g., Smith v. Smithfield Foods, Inc.,* No. 2:21CV194, 2021 WL 6881062, at *12 (E.D. Va. Dec. 21, 2021) (refusing to grant conditional certification for a proposed class of "all 'production employees'" and explaining "courts tend to deny conditional certification when job descriptions are varied"). Plaintiff has not offered anything beyond conclusory statements to establish that such putative class members should be included in the same class. *See generally* FAC.

Similarly, Plaintiff's putative class is too overinclusive to ensure commonality under Rule 23. *See* FAC at ¶ 157 ("Under Rule 23..., Named Plaintiff is entitled to certify an opt-out class action to provide VWPA remedies for ***all Virginia employees whose wages were withheld in this unlawful manner.***") (emphasis added); *see also Stafford v. Bojangles' Restaurants, Inc,* 123 F.4th 671, 681 (4th Cir. 2024) (stating, *Wal-Mart Stores, Inc. v. Dukes* "does not permit commonality on the sole basis that class members 'all suffered a violation of the same provision of law,' as this does not ensure that a common answer can address the entire class's claims") (quoting 564 U.S. 338, 350 (2011)). In the absence of more precise class parameters, Plaintiff's putative class action

fails to meet Rule 23(a)'s commonality requirement. *Id.* at 682 ("[B]ecause the composition of claims is unknown, we cannot know that common questions predominate over individuals ones, as required under Rule 23(b)(3).").

Additionally, Plaintiff cannot show commonality because "'when the defendant's affirmative defenses (such as … the statute of limitations) may depend on facts peculiar to each plaintiff's case, class certification is erroneous.'" *Bond v. Marriott Int'l, Inc.,* 296 F.R.D. 403, 408 (D. Md. 2014) (quoting *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 342 (4th Cir. 1998)); *see also Cheng v. Liu*, No. 4:20CV01726(JD,) 2023 WL 4996935, at *7 (D.S.C. June 16, 2023), *aff'd*, No. 23-1806, 2024 WL 3579606 (4th Cir. July 29, 2024), *cert. denied*, 145 S. Ct. 1139, 220 L. Ed. 2d 435 (2025) ("Defendants have raised a statute of limitations defense, which may render Plaintiffs' claims atypical of other class members without statute of limitations issues."). As discussed at length above in **Section IV(B)(1)**, Plaintiff's claims are subject to several defenses – including a statute of limitations defense – that are not uniformly applicable to all putative class members. *See Gresser v. Wells Fargo Bank, N.A.,* No. CCB-12-987, 2014 WL 1320092, at *3 (D. Md. Mar. 31, 2014) ("Although unique defenses against the named plaintiffs do not always preclude a finding of typicality, courts have found they do defeat typicality when they threaten to dominate the litigation, particularly when they go to the ability to prove a defendant's liability to the named plaintiffs.") (internal cites and quotes omitted). Moreover, numerous members of any hypothetical class or collective action are parties to arbitration or dispute resolution agreements with Caesars that contain class or collective action waivers and, therefore, cannot pursue any VWPA or other claims (or have such claim(s) pursued on their behalf) in this judicial forum. *See e.g., Wu v. MAMSI Life & Health Ins. Co.,* 269 F.R.D. 554, 563 (D. Md. 2010) (finding typicality did not exist, in part, because the named plaintiff faced a waiver

defense in her breach of contract claim); *cf. Bond*, 296 F.R.D. at 408 (finding, the named plaintiff "is not typical because he did not execute a release and a number of other members of the class … did"). Plaintiff's class and collective allegations should be dismissed or stricken accordingly.

Plaintiff cannot establish predominance or superiority, either. Defendant's "liability to some [putative] class members requires individualized inquiries into whether those class members waived, or are estopped from bringing, their claims." *Gresser,* No. CCB-12-987, 2014 WL 1320092, at *6; *see also Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 438 (4th Cir. 2003) (class certification improper where "it appears [the defendant's] affirmative defenses are not without merit and would require individualized inquiry in at least some cases"). And as noted, many of the putative class or collective members have waived such claims based on prior agreements they executed with Caesars. In other words, allowing this case to proceed as a class action would "eviscerate the efficiencies that classwide adjudication might otherwise afford" due to the "managerial burden" of the numerous "mini-trials" required by Plaintiff's claims. *Ganesh*, *L.L.C.,* 183 F.R.D. at 491. Accordingly, this Court should dismiss or strike the class allegations contained in Count VII of the FAC.

4. **Plaintiff's FLSA Collective Action Claims Should Be Dismissed Because He Cannot Establish that the Putative Class Is "Similarly Situated."**

As discussed in **Section (IV)(B)(2)(a)**, *supra*, the FLSA authorizes individuals to bring a private cause of action on behalf of themselves "and other employees similarly situated." 29 U.S.C. § 216(b). Federal courts typically employ a two-step analysis for determining if plaintiffs are "similarly situated" and entitled to collective treatment under the FLSA. *See Midkiff v. Anthem Companies, Inc.*, 640 F. Supp. 3d 486, 492 (E.D. Va. 2022) (referencing the two-step notice and decertification process). However, the mere fact that Plaintiff has not yet moved for conditional

certification does not mean the Court cannot strike these allegations which are clearly meritless on their face. *See e.g., In re Fam. Dollar FLSA Litig.,* No. 3:08MD1932-GCM, 2014 WL 1091356, at *2, n.4 (W.D.N.C. Mar. 18, 2014) (granting a motion to strike collective action allegations prior to any motion conditional certification and explaining "there is no doubt the Court has the authority to consider [d]efendant's challenge to the propriety of conditional certification without waiting for [p]laintiffs to seek conditional certification").

Here, Plaintiff's collective action allegations in Count VI of the FAC should be dismissed because the same factual issues that preclude Plaintiff from establishing commonality, predominance, and/or superiority foreclose any finding that Plaintiff is similarly situated to his proposed class. Based on the conclusory allegations pled in the FAC, there are simply too many differences within the proposed class, and judicial efficiency would not be served by allowing this multitude of claims to go forward in one proceeding. *See* FAC at ¶¶ 12, 97, 149, 157. Plaintiff's conclusory statements regarding common treatment are not enough to justify collective treatment. *See generally Litty v. Merrill Lynch & Co., Inc.*, No. 14CV0425, 2015 WL 4698475, at *7 (C.D. Cal. Apr. 27, 2015) (collecting cases and holding "judicial economy would not be advanced by allowing this suit to proceed as a collective action" "[b]ecause of the individualized inquiries involved"); *see also Andrews v. Bojangles Opco, LLC*, No. 23CV00593, 2024 WL 4154825, at *3 (W.D.N.C. Sept. 11, 2024) (partially denying plaintiff's motion for conditional certification and explaining, "[t]he mere classification of a group of employees as exempt under the FLSA, without more, is insufficient to show a common policy, plan, or practice for the purposes of section 216(b)") (cites omitted); *Roldan v. Bland Landscaping Co., Inc.*, 341 F.R.D. 23, 28 (W.D.N.C. 2022) (explaining, "relying solely on a common job description is not enough to show that potential members are similarly situated"); *Dearman v. Collegiate Hous. Servs., Inc.*, No.

517CV00057RJCDCK, 2018 WL 1566333, at *3 (W.D.N.C. Mar. 30, 2018) (citing *In re Fam.*

*Dollar FLSA Litig.* and stating "it is not enough to merely point to common job titles and a uniform

classification to properly support a showing that potential plaintiffs are all similarly situated …

After all, employees with the same job titles do not necessarily do the same work. … some workers

under the same job title might fall into an exempt status from the FLSA's overtime requirement

while others do not by virtue of completing different duties") (cites omitted).  Plaintiff's collective

action allegations in Count VI of the FAC should therefore be dismissed or stricken.[5]

## V.    **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court dismiss or, in the

alternative, strike with prejudice, Plaintiff's claims under the Fair Labor Standards Act and the

Virginia Wage Payment Act in Count VI and Count VII, respectively, of the First Amended

Complaint.

Dated: August 27, 2025                              Respectfully submitted,

                                                    */s/ Tiffany din Fagel Tse*
                                                    Alexander P. Berg (VSB No.: 95557)
                                                    Tiffany din Fagel Tse (VSB No.: 92958)
                                                    LITTLER MENDELSON, P.C.
                                                    1800 Tysons Boulevard, Suite 500
                                                    Tysons Corner, VA 22102
                                                    703-442-8425 (T)
                                                    703-662-6178 (F)
                                                    ABerg@Littler.com
                                                    TTse@Littler.com

                                                    *Counsel for Defendant*

---

[5]  Under the Prayer for Relief section of the FAC, Plaintiff requests issuance of notice.  *See* FAC at Section IX(c) and (d). Plaintiff has not filed a separate Motion for Conditional Certification and Defendant therefore interprets Plaintiff's language as merely reserving its right to seek certification later in the litigation.  Defendant therefore reserves its right to oppose any request for conditional certification and notice to the extent the collective action allegations are not stricken from the FAC. Similarly, Defendant reserves the right to oppose any future motion by Plaintiff for class certification if the class action allegations are not stricken.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 27, 2025, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system, which will notify the following parties of record:

> Christopher E. Collins, Esq. (VSB No. 90632)
> Mia Yugo, Esq. (VSB No. 92975)
> Dylan Craig, Esq. (VSB No. 100709)
> YUGO COLLINS, PLLC
> 25 Franklin Road, SW
> Roanoke, Virginia 24011
> Tel: (540) 861-1529
> Direct: (540) 855-4791
> Chris@YugoCollins.com
> Mia@YugoCollins.com
> Dylan@YugoCollins.com
>
> *Counsel for Plaintiff*

/s/ *Tiffany din Fagel Tse*
Tiffany din Fagel Tse