IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| **LEVAR FOWLER on behalf of himself and others similarly situated,** )<br>*Plaintiff*, )<br> )<br>**V.** )<br> )<br>**CAESARS VIRGINIA, LLC**, )<br> )<br>*Defendant.* ) | Civil Action No. 4:24-cv-00029 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS AND MOTION TO STRIKE**

COMES NOW Plaintiff Levar Fowler ("Plaintiff" or "Mr. Fowler"), through undersigned counsel, and files this Memorandum in Opposition to the Partial Motion to Dismiss and Motion to Strike Class and Collective Action filed by Defendant Caesars Virginia, LLC[1] ("Caesars" or "Defendant").

I.   **INTRODUCTION**

Defendant unlawfully terminated Plaintiff after he complained about race-based discrimination. Defendant continuously allowed White employee Matthew Thyer to harass and make racist and derogatory statements to Plaintiff. On many occasions, Mr. Thyer referred to Plaintiff as "boy," disrespected him, and treated him as his subordinate. When Plaintiff complained about Mr. Thyer's behavior to his supervisors, they told him to "walk and away" and did nothing. On another occasion, Mr. Thyer ordered Plaintiff to follow him to the training room,

---

[1] Defendant curiously alleges Caesars Resort Collection, LLC was Plaintiff's employer, not Caesars Virginia, LLC. However, Caesars Virginia, LLC is the only Caesars entity registered to do business in Virginia. It appears these two entities likely acted as an integrated employer with respect to Plaintiff and are both liable. See Bolender v. Bio-Medical Applications of Va., Inc., 2024 U.S. Dist. LEXIS 110708, *18-20 (W.D. Va. 2024).

looked Plaintiff in the eye and stated, "you n-words are getting out of control." Plaintiff again complained about Mr. Thyer's outrageous behavior. Instead of disciplining Mr. Thyer, <u>Plaintiff</u> was suspended and then terminated under the pretext of bullying employees and harassing customers.

When Defendant hired Plaintiff, Defendant provided Plaintiff with a sign-on bonus of $5,000, which, while <u>paid</u> in the first paycheck, was <u>attributable</u> to work that would be performed over a 12-month period. The sign-on bonus that Plaintiff and other non-exempt employees received was nondiscretionary. However, when Plaintiff worked overtime, Defendant failed to incorporate that bonus into his regular rate of pay or overtime premiums. By failing to do so, Defendant violated the FLSA and VWPA.

Plaintiff filed a Complaint against Defendant on August 7, 2024, alleging claims under Title VII and the VHRA. On August 13, 2025, Plaintiff filed his First Amended Complaint ("FAC") asserting claims of unpaid wages in violation of the FLSA and VWPA.

## II. STATEMENT OF FACTS

Plaintiff is an African American male who was employed by Caesars at its Danville, Virginia location. (FAC ¶ 38.) Plaintiff began working for Caesars on May 1, 2023, as a Table Games Dual Rate Assistant Shift Manager and Supervisor ("DRASM"). (<u>Id.</u> at 40-41.) As part of his job, Plaintiff regularly interacted with other employees, customers, and managers of Caesars. (<u>Id.</u> at 43.) DRASMs are assigned to either a day shift, swing shift, or graveyard shift; Plaintiff worked the graveyard shift. (<u>Id.</u> at 44-45.)

Plaintiff reported to his immediate supervisor, Antonia 'Toni' Trammel ("Ms. Trammell"). (<u>Id.</u> at 46.) White manager Matthew Thyer worked as the Table Games Shift Manager for the graveyard shift. (<u>Id.</u> at 47.) Although Plaintiff and Mr. Thyer were both assistant managers, Mr.

2

Thyer routinely treated Plaintiff as a subordinate and referred to Plaintiff as "boy"[2] when he needed something. (Id. at 50-51.) On May 24, 2023, Plaintiff complained about Mr. Thyer's behavior to Ms. Trammel. (Id. at 54.) Mr. Thyer was suspended for two days, but continued to exhibit racist behavior towards Plaintiff after he returned from suspension. (Id. at 55-56.)

Post-suspension, Mr. Thyer was immediately given the authority of "pencil duty," which awarded him limited authority over Plaintiff. (Id. at 57.) Caesars rewarded the White abuser for racially abusing his Black victim by giving him additional power over Plaintiff. After obtaining this new power, Mr. Thyer began belittling Plaintiff and treating Plaintiff as one of **his** employees. (Id. at 58.) On June 16, 2023, Plaintiff sent a text message to Ms. Trammel saying that he could not work with Mr. Thyer anymore because of the racist treatment he was experiencing. (Id. at 59.) Rather than investigating and attempting to cure the animosity (her job), Ms. Trammel instead told Plaintiff that he should "walk away." (Id. at 60)

When Ms. Trammel failed to address Plaintiff's concerns, Plaintiff asked for a meeting after an interaction he had with Mr. Thyer. (Id. at 68.) On July 14, 2023, Plaintiff entered through the back of the casino to clock in. (Id. at 62.) Once he entered, Plaintiff saw Mr. Thyer finish speaking with another employee and Mr. Thyer clearly appeared upset. (Id. at 64.) As he entered the training room, Mr. Thyer looked at Mr. Fowler and stated, "**you n-words are getting out of control**." (Id. at 65.) Mr. Thyer continued by yelling at Plaintiff as if he was attempting to intimidate him. (Id. at 66.) Following this interaction, Plaintiff did what he was told to do by Ms. Trammell (do nothing and "walk away") and sent another text message to Ms. Trammell asking to meet with her and Kevin Schechter ("Mr. Schechter"), the Table Games Director. (Id. at 68.)

---

[2] The word "boy" when used in reference to a Black adult male is commonly known to be used as a derogatory statement and has a racist connotation when used in such a way.

Mr. Schechter scheduled a meeting on July 15, 2023, to discuss the recent incident involving Mr. Thyer. (Id. at 69.) Curiously, that same day, a Dealer complained that Plaintiff communicated negative feedback to her in front of hotel guests and players. (Id. at 72.) The same day, a guest allegedly sent an e-mail to Ms. Trammell complaining about Plaintiff. (Id. at 73.) Plaintiff was told to provide a written statement about the complaints regarding him and at no point did they discuss Mr. Thyer's behavior. (Id. at 75.). In the statement, Plaintiff notified Caesars about the racial slurs and "unethical and unprofessional behavior" Mr. Thyer made towards him. (Id. at 77.) Plaintiff also provided how he previously reported Mr. Thyer's behavior to Mr. Schechter and Ms. Trammel. (Id. at 79.) Plaintiff stated that the meeting was originally supposed to be about the racist treatment he was experiencing but instead he believed he "[was] being punished for speaking up about unethical conduct." (Id. at 80.). On July 20, 2023, Plaintiff was told he needed to speak with Human Resources the following day. (Id. at 81.) On July 21, immediately following Plaintiff's arrival to Human Resources, Defendant attempted to force Plaintiff to falsely admit that he was bullying Dealers. (Id. at 83.) Plaintiff denied these accusations and again tried to explain the racial comments and attacks by Mr. Thyer. (Id. at 84.) Defendant didn't appear to be concerned with Mr. Thyer's behavior and terminated Plaintiff during the meeting. (Id. at 85.)

After Mr. Fowler's termination, recently discovered documents show that he received a $5,000 sign-on bonus that is required by DOL regulations to be allocated over his first year of employment. (See id. at 86-88; **Exhibit 5**.) However, Plaintiff's paystubs show that when he worked overtime, Defendant failed to incorporate that bonus into his regular rate of pay or overtime premiums. (See FAC at 90; **Exhibits 6, 7, 8**.) When Plaintiff's bonus is applied to his regular rate of pay, Plaintiff's overtime rate should have been calculated at $34.90. (See FAC at 92.)

4

### III.     STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2).  The purpose of Rule 8 is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 558 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 558 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 556 U.S. at 678 (2009).  "In determining facial plausibility, the court must accept all factual allegations in the complaint as true." Crew v. Nature's Variety, Inc., 2022 U.S. Dist. LEXIS 165878 *7 (W.D. Va. 2022).  The complaint's allegations must be "taken as true and all reasonable inferences drawn in a plaintiff's favor" and a motion to dismiss "does not . . . resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. Mais v. Albemarle Cnty. Sch. Bd., 657 F. Supp. 3d 813, 822 (W.D. Va. 2023) (quoting Twombly, 550 U.S. at 555 (2007); King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016).

"Under Federal Rule of Civil Procedure 12(f), a court 'may strike from the pleadings an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'" Hooper v. BWXT Gov't Grp., Inc., 2016 U.S. Dist. LEXIS 152965, *5. "Motions to strike are 'generally viewed with disfavor because striking a portion of a pleading is a drastic remedy."'" Id. (quoting Waste Management Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001)).  "Even when 'technically appropriate and well-founded,' motions to strike are often 'denied in absence of

demonstrated prejudice to the moving party.'" Hooper, 2016 U.S. Dist. LEXIS 152965, *5 (quoting Clark v. Milam, 152 F.R.D. 66, 70 (S.D. W. Va. 1993)).

IV. **LAW & ARGUMENT**

A. **Plaintiff's Individual FLSA and VWPA Claims Were Amended Within the Applicable Time Period**

1. **Plaintiff's Claim under Count VI Is Not Time Barred Because Defendant Willfully Violated the FLSA**

Under 29 U.S.C. § 255(a), an action to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages under the Fair Labor Standards Act ("FLSA"), may be commenced withing two years after the cause of action accrued, . . . except that **a cause of action arising out of a willful violation may be commenced within three years** after the cause of action accrued." (emphasis added). "The standard for determining willfulness is whether the employer either knew, or showed reckless disregard, as to whether his conduct violated the Act." Martin v. Deiriggi, 985 F.2d 129, 135 (4th Cir. 1992) (citing McLaughlin v. Richland Shoe Co., 486 U.S. 128 (1988)). Moreover, "a plaintiff does not need to allege specific facts to support an allegation that defendants willfully violated the FLSA for the application of a three-year statute of limitations at the motion to dismiss phase." Farias v. Strickland Waterproofing Co., 2021 U.S. Dist. LEXIS 104493, *6 (W.D. Va. 2021) (emphasis added) (internal quotations and citations omitted).

In Farias, the plaintiffs filed a collective action against their employer, alleging claims for violations of the FLSA and Virginia wage statutes for failing to pay overtime. Id. at *1. Thereafter, the defendant filed a motion to dismiss, arguing that the FLSA's statute of limitations barred the plaintiffs from bringing claims beyond the two-year statute of limitations. Id. The plaintiffs argued that the defendant willfully violated the FLSA and that a three-year statute of limitations should apply rather than a two-year period. Id. at *5. In support of their motion to dismiss, the

6

defendant argued that the plaintiffs did not make sufficient allegations in the complaint to support an inference that the FLSA violation was willful. Id. The plaintiffs argued that sufficient facts had been alleged in the complaint to support an inference of willfulness. Id. at *6. The plaintiffs supported their position by pointing to the complaint, which contained factual allegations that they frequently worked in excess of 40 hours per week without overtime pay, and that the defendant had "extensive involvement in assigning them that work, supervising them, tracking their time, controlling their schedules." Id. at *7.

After accepting the plaintiffs' facts as true and drawing all reasonable inferences in their favor, the court found that the plaintiffs' allegations supported a finding of willfulness. Id. at *8. The court held that "the allegations, if true, indicate direct control and knowledge of Plaintiffs' schedules and tasks by [the defendant], and likewise [the defendant's] knowledge that these schedules regularly reflected more than 40 hours worked within a week, without overtime pay." Id. The court further reasoned that "where the structure of a business is such that the defendant would have knowledge of the conduct that allegedly violated the FLSA, the willfulness of the violations depends largely upon Defendants' knowledge of the pertinent requirements of the FLSA." Id. at *8-9. (internal quotations and citations omitted). In support of their holding, the court reasoned that "given common knowledge of overtime requirements, the Court finds it reasonable to infer that [the defendant] knew, or recklessly disregarded the possibility, that its practices violated the FLSA." Id. at *9. Finally, the court found that dismissing the complaint wasn't appropriate at the motion to dismiss stage and that while "the burden to establish willfulness rests with the employee, … the fact of willfulness is sufficiently alleged and supported by accompanying and relevant allegations of fact, the Court concludes that resolving such a question

7

of fact and thus limiting Plaintiffs' claim to those within the two-year statute of limitations is inappropriate at this point." Id.

Here, Plaintiff's First Amended Complaint pleads sufficient facts that, when taken as true and drawing all reasonable inferences in his favor, support the position that Defendant willfully violated the FLSA. Plaintiff alleged that Defendant provided Plaintiff with a $5,000 sign-on bonus. (FAC at 87.) Plaintiff alleged that, because this bonus was nondiscretionary, the bonus was required to be calculated into Plaintiff's regular rate of pay and overtime premiums. (Id. at 90.) Plaintiff alleged that Plaintiff worked multiple weeks of overtime, yet Defendant failed to incorporate that bonus into his overtime rate. (Id.) Finally, Plaintiff alleged that by failing to incorporate that bonus into his regular rate of pay, Defendant violated the FLSA. (Id. at 150.)

Like the defendant in Farias, Defendant argues that Plaintiff did not allege sufficient facts in his First Amended Complaint to support an inference that the FLSA violation was willful. (ECF No. 22 at 7.) However, like the complaint in Farias, the allegations contained in Plaintiff's FAC imply that Defendant knew that Plaintiff received a nondiscretionary bonus and that Defendant knew that failing to incorporate that bonus into Plaintiff's overtime rate violated the FLSA. Thus, it is reasonable to infer based on Plaintiff's allegations that Defendant either knew, or recklessly disregarded that by failing to incorporate the bonus into Plaintiff's regular rate of pay, it violated the FLSA. Finally, like the court reasoned in Farias, dismissing Plaintiff's First Amended Complaint wouldn't be appropriate at this stage because Plaintiff has sufficiently alleged Defendant willfully violated the FLSA. Like the court found in Farias, resolving a question of fact and limiting Plaintiff's claims at the motion to dismiss stage would be inappropriate. Finally, Plaintiff does not need to allege specific facts to support the allegation Defendant willfully violated the FLSA for a three-year statute of limitations at the motion to dismiss phase. All that is required

8

is that Plaintiff allege "sufficient factual matter," that when taken as true, state a claim of relief that is plausible. Plaintiff has met his burden and has sufficiently alleged that the allegations, when taken as true, plausibly suggest that Defendant willfully violated the FLSA. As such, Plaintiff's claims under the FLSA were brought within the applicable time period.

### B. Plaintiff's Claims Under Count VI & Count VII Plead Sufficient Facts Upon Which Relief Can Be Granted

Plaintiff's claims under the FLSA and VWPA plead sufficient facts to state a claim upon which relief can be granted. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2). Under the FLSA, employers are required to compensate their employees at least one and one-half times their regular rate if they work longer than forty hours in any workweek. 29 U.S.C. § 207(a)(1). In determining the employee's "regular rate", all remuneration for employment must be included unless specifically excluded. 29 U.S.C. § 207(e). Under 29 CFR § 778.211, discretionary bonuses need not be included in the calculation of the employee's regular rate, however, nondiscretionary bonuses must be included. Nondiscretionary bonuses are those which are determined by the employer without prior promise or agreement. Id. For a bonus to qualify for exclusion as a discretionary bonus, the employer must retain discretion both as to the fact of payment as to the amount until a time quite close to the end of the period for which the bonus is paid. 29 CFR § 778.211(b). Any bonus "which is promised to employees upon hiring **would not be excluded from the regular rate**." 29 CFR § 778.211(c) (emphasis added).

Defendant offered Plaintiff a sign-on bonus of $5,000 upon his hiring. Because the bonus was promised upon his hiring, it is nondiscretionary. Moreover, Defendant provided that the bonus would be repayable depending on certain circumstances. That repayable period extended for the first 12 months of his employment. Defendant argues that because Plaintiff did not work any

9

overtime <u>during the week in which he received the bonus</u> or within his first 30 days of employment, the bonus did not need to be calculated in his regular rate of pay. (ECF No. 22 at 8, 9.) Defendant misunderstands Plaintiff's position and the requirements of nondiscretionary bonuses with respect to the FLSA. Because the sign-on bonus was potentially repayable to Defendant during the course of a 12-month period, Plaintiff's continued employment was a condition of receiving the sign-on bonus. Therefore, for 12 months, Plaintiff was earning the sign-on bonus, and the sign-on bonus was clearly not intended to cover only the period in which he was paid. Because Plaintiff was continuing to "earn" the sign-on bonus throughout his employment, his regular rate of pay needed to include this bonus if Plaintiff worked overtime during the 12-month period. Defendant cites to 29 CFR § 778.209(a) which states that, "**[n]o difficulty arises in computing overtime compensation if the bonus covers only one weekly pay period**." (Id. at 8) (emphasis added.) Defendant would be correct if the sign-on bonus was meant to only cover the week in which he received it. However, as the sign-on bonus is structured, it is clear that the sign-on bonus was meant to cover a period of 12 months, not solely the week in which Plaintiff received it.

      Defendant further argues that the Court may consider Plaintiff's pay slips when analyzing his FLSA and VWPA claims. Defendant alleges that Plaintiff is attempting to pull a fast one over this Court by "conspicuously omitting Fowler's paystub from the first week of his employment." (Id.) Plaintiff did not include Plaintiff's first paystub (or any other paystub in which Plaintiff did not work overtime) because it is irrelevant to Plaintiff's allegations. As explained *supra* and in Plaintiff's First Amended Complaint, Plaintiff alleges that the pro-rated portion of the sign-on bonus Plaintiff received should have been included in his regular rate of pay for each pay period during the first 12 months because that is the period the bonus was meant to cover. (See FAC ¶ 141: "Because this bonus was nondiscretionary, the $5,000 bonus should have been calculated into

10

Named Plaintiff's minimum wages when determining his overtime rate over the following 12-month period."). Plaintiff only included the paystubs when Plaintiff worked overtime because those are the only paystubs that are relevant to Plaintiff's claims.

Finally, Plaintiff's First Amended Complaint pleads sufficient facts to state a claim of relief under the VWPA. Under the VWPA, it is unlawful for an employer to withhold any part of an employee's wages subject to certain exemptions which are not relevant here. Va. Code Ann. § 40.1-29(C). In his First Amended Complaint, Plaintiff alleged Defendant failed to accurately determine his overtime rate. (FAC ¶ 90.) Plaintiff alleged that by failing to accurately compensate him at his required overtime rate, Defendant withheld wages from Plaintiff in violation of the VWPA. (Id. at 154.) Taking Plaintiff's allegations as true and drawing all reasonable inferences in his favor, Plaintiff's First Amended Complaint clearly pleads sufficient facts to show he is entitled to relief. As such, Plaintiff has met his burden with respect to Count VII.

### C. Plaintiff's First Amended Complaint Pleads Sufficient Facts to Certify Class and Collective Actions

Under 29 U.S.C. § 216(b), "An action . . . may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. The purpose of a collective action is to allow employees the ability "to efficiently resolve in one proceeding common issues of law and fact arising from the same alleged [unlawful conduct]." Farias v. Strickland Waterproofing Co., 2022 U.S. Dist. LEXIS 63704 *8 (W.D. Va. 2022) (internal citations and quotations omitted). The Fourth Circuit has held that "plaintiffs are similarly situated under § 216(b) if they raise a similar issue as to coverage, exemption, or nonpayment of minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions." Id. at *9 (internal citations and quotations omitted). "The standard is fairly lenient and requires only minimal

11

evidence, such as factual evidence by affidavits or other means." Id. (internal citations and quotations omitted).

   1. **Plaintiff's proposed Collective Action encompasses any employee who suffered the same injury Plaintiff sustained – nonpayment of wages**

Defendant argues that Plaintiff improperly seeks to represent all potential class members because he was not personally injured. (ECF No. 22 at 10). As explained *supra*, Plaintiff suffered an injury in fact because he worked overtime during the period in which the sign-on bonus should have been calculated in his regular rate of pay. Therefore, Plaintiff has alleged that he has personally been injured. Defendant further argues that, "Plaintiff cannot represent the interest of other individuals who received other "non-discretionary bonuses" that he did ***not personally*** receive." (Id.) However, as the Fourth Circuit has held, "plaintiffs are similarly situated under § 216(b) if they raise a similar issue as to coverage, exemption, or nonpayment of minimum wages or overtime arising **from at least a manageably similar factual setting with respect to their job requirements and pay provisions**." Farias, 2022 U.S. Dist. LEXIS 63704 *8 (emphasis added).

While Plaintiff did not receive any other nondiscretionary bonuses other than the sign-on bonus, the class should not be limited only to those individuals who received sign-on bonuses. Receiving the sign-on bonus **is not** the injury which Plaintiff alleges; rather the injury Plaintiff alleges is **receiving a nondiscretionary bonus** that was not included when calculating Plaintiff's regular rate of pay to determine his overtime premiums (which is required under the FLSA). All employees of Defendant who received a nondiscretionary bonus (regardless of the type) and their regular rate of pay did not incorporate that bonus, then that employee has suffered the **same injury that Plaintiff alleges**. Under the FLSA, any employee who received a nondiscretionary bonus would be considered similarly situated to Plaintiff because a similar issue as to the nonpayment of overtime is raised and the nonpayment would be from a similar factual setting.

12

### 2. Virginia Federal Courts have consistently held that Plaintiffs can bring class actions under Rule 23 regarding Virginia state wage claims

Defendant argues that Plaintiff cannot use Rule 23 for the class claim under the VWPA, because it would "improperly create a new substantive right, in violation of the Rules Enabling Act." (DEF's Memo. in Opp. at 15.) Defendant argues that because the VWPA adopted the collective action procedures of the FLSA, Plaintiff is unable to bring Virginia wage claims under Rule 23. (Id.) However, even after the 2020 amendments to the VWPA, Virginia federal courts have consistently allowed plaintiffs to assert class actions under Rule 23 in claims involving the VWPA. (See, e.g., Barb v. Heath Consultants, Inc., 2024 U.S. Dist. LEXIS 118136 (W.D. Va. 2024) certifying a class under Rule 23 for claim under VWPA; Stacy v. Jennmar Corp. of Va., Inc., 2022 U.S. Dist. LEXIS 82440 (W.D. Va. 2022) granting motion for class certification under Rule 23 for claims under the VWPA); Glennon v. Anheuser-Busch, Inc., 2022 U.S. Dist. LEXIS 239440 (E.D. Va. 2022) (denying defendant's motion to strike claims under Rule 23 and holding Fed. R. Civ. P. 23 opt-out did not violate the Rules Enabling Act because the opt-in procedure of the Virginia Wage Payment Act was a *procedural* mechanism, not part of *substantive* state law)).

Defendant acknowledges that Federal Courts in the Western District of Virginia has routinely allowed plaintiffs to use Rule 23 in bringing claims under the VWPA, yet "urges this Court to reject these decisions." (ECF No. 22 at 16.) Coincidentally, Defendant asks this Court to reject all of the previous decisions that are not "binding on this Court" while at the same time citing to District Courts located outside of Virginia. Virginia federal courts have confirmed that the opt-in provision of the VWPA is a procedural – not substantive – right. As such, Plaintiff can maintain a Rule 23 Class Action for claims under the VWPA.

13

### 3. Plaintiff satisfies all requirements for a Rule 23 Class Action

"A party seeking class certification must satisfy four requirements: numerosity, commonality, typicality, and adequacy of representation" Barb v. Heath Consultants, Inc., 2024 U.S. Dist. LEXIS 118136 *11 (W.D. Va. 2024) (quoting Fed. R. Civ. P. 23(a)). "The class action must also fall within one of the three categories enumerated in Rule 23(b)(3)." Id. (internal quotations and citations omitted). A class action is appropriate if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In Stacy v. Jennmar Corp. of Va., Inc., 2022 U.S. Dist. LEXIS 82440 (W.D. Va. 2022), the plaintiffs were previously granted conditional certification of a collective action under § 216(b) of the FLSA and moved for class certification under Rule 23 for Virginia state claims involving the VWPA. Id. at *1. The plaintiffs alleged they were uncompensated for pre-shift activities and alleged that other employees were subject to the same working hours and compensation policies. Id. at *3. Plaintiffs further alleged that the defendants used a common practice of rounding time and employees were not compensated when defendants rounded the time down. Id. at *5. The proposed class consisted of all current and former non-exempt employees employed by defendants in the Commonwealth of Virginia with a subclass involving claims under the VWPA. Id. at *7. After analyzing each requirement for a Rule 23 class certification, the court granted the plaintiffs' motion for class certification under Rule 23(b)(3). Id. at *23.

#### a. Numerosity

"To satisfy numerosity, the plaintiff must show that the class is so numerous that joinder of all members is impracticable." Stacy, 2022 U.S. Dist. LEXIS 82440, *11 (citing Fed. R. Civ. P.

14

23(a)(1)). "There is no specified number that is needed to maintain a class action. Rather, an application of the rule is to be considered in light of the particular circumstances of the case." Id. at *10. (internal quotations and citations omitted). "[A] class of only 18 members has been approved." Id. In Stacy, the proposed class did not contain a definite number but the plaintiffs represented it was likely to include at least 300 persons. Id. at *11. The court found that the plaintiffs satisfied the numerosity requirement and found that "class members are easily identifiable from the defendants' employment records." Id.

Here, the potential class is so numerous that joinder of all members is impracticable. The potential class will likely include all non-exempt employees of Defendant. It is statistically impossible that Plaintiff was the only employee to receive a sign-on bonus and Defendant has offered no explanation for why that could possibly be the case. The facts suggest Defendant has a common practice of offering employees a nondiscretionary sign-on bonus, yet not including that bonus when calculating their regular rates of pay. Likewise, if Defendant has other practices of giving employees nondiscretionary bonuses, yet not incorporating those bonuses into their regular rate of pay, then those employees would also be members of the class. While the number of potential class members is not currently known, like the court reasoned in Stacy, Defendant's payroll records will confirm which employees would be included in the class.

    b. **Commonality and Typicality**

"The threshold requirements of commonality and typicality are not high. Commonality requires that there are questions of law or fact common to the class. . . . The common question must be of such a nature that its determination will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at *11 (internal quotations and citations omitted). "Typicality concerns whether the class representatives are members of the class and possess the

15

same interest and suffer the same injury as the class members." Id. at *12 (internal quotations and citations omitted). In Stacy, the court found that the plaintiffs satisfied the commonality requirement because there were multiple issues common to the class, including whether defendants failed to pay class members all wages they earned while employed by Defendant. Id. at *13.

Here, there is both commonality of questions of law and facts common to the potential class. There are multiple common questions between all class members regarding the sign-on bonus. The first question that is common of all class members is whether the sign-on bonus was nondiscretionary. The second question that is common to all class members is whether the sign-on bonus should have been calculated into the class member's regular rate of pay and overtime premiums. The final question that is common between all class members is the period over which the sign-on bonus was supposed to be allocated. Moreover, all class members would have the same set of facts, same injury, and the same claim. All class members would have the same set of facts because they either received a nondiscretionary bonus, or they didn't. If an employee received a nondiscretionary bonus, worked overtime, but was not compensated at the appropriate overtime rate, then that employee would suffer from the same injury as other class members–nonpayment of wages. Finally, all class members would have the same claim of the withholding of wages under the VWPA.

The typicality requirement for Rule 23 is satisfied because Plaintiff (the proposed class representative) would be a member of the class, possess the same interest as the class members, and suffered from the same injury as the class members.

   **c. Adequacy of Representation**

In determining whether the representative parties will fairly and adequately protect the interest of the class, the analysis proposes two questions. "First, proposed class representatives

16

must be members of the class they purport to represent and their interests must not be in conflict with those of the other class members. Second, class counsel must be qualified, experienced and generally able to conduct the proposed litigation." Id. at *17. (internal quotations and citations omitted).

As explained *supra*, Plaintiff (the proposed class representative) is a member of the class and his interest would not be conflict with any other members of the class. While Plaintiff still is pursuing individual claims under Title VII and the VHRA against Defendant, those claims pose no conflict to any claims under the VWPA. Second, potential class counsel is extremely qualified, experienced, and able to conduct the proposed litigation. Plaintiff's counsel has litigated multiple complex wage and hour class and collective actions under the FLSA and VWPA cases. As such, Plaintiff's counsel is extremely qualified to represent the potential class.

### d. Predominance and Superiority

Plaintiff asserts a Rule 23 class action under Fed. R. Civ. P. 23(b)(3) because the questions of law and facts are common to class members, which predominate over any questions affecting only individual members, and class action is superior to other available methods for fairly and efficiently adjudicating the controversy. "The predominance requirement is similar but more stringent than the commonality requirement" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Id. at *18. In determining superiority, "the court should consider: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular form; and (D) the likely difficulties in managing a class action." Id. at *21 (citing Fed. R. Civ. P. 23(b)(3)).

17

Here, the questions that are common among class members predominate over any questions affecting only individual members. The common question of fact is whether the employee received a nondiscretionary bonus, but their regular rate of pay did not include that bonus. The common questions of law include whether the nondiscretionary bonus should have been included in their rate of pay and whether not including such bonus violated the VWPA.

When considering the four factors to determine superiority, it is clear this requirement is met as well. In Stacy, the court found the first factor for superiority had been satisfied because the potential small amount of individual damages compared to the financial burden to litigate their individual claims weighed heavily in favor of joining a class action. Id. at *22. Like the court reasoned in Stacy, the potential individual claims here would also likely be relatively small. For example, Plaintiff only worked a total of approximately 12 hours of overtime. (FAC ¶¶ 91-95.) It is likely that other potential class members worked a relatively small amount of overtime, which would not be worth the financial burden of litigating their individual claims. Regarding the second factor, Plaintiff is not aware of any current litigation that is already begun by or against class members with respect to these claims under the VWPA. Regarding the third factor, this is the ideal forum to conduct this litigation as it is the judicial district in which Defendant operates its business and where employees earned their wages. Finally, with respect to the fourth factor, there are no likely difficulties that would prevent the class action from being managed. As mentioned *supra*, Defendant's payroll records will be able to confirm the potential class members. The number of potential class numbers is not one that would make the class unmanageable.

### D. **CONCLUSION**

The Amended Complaint pleads sufficient facts that, when taken as true and all reasonable inferences are drawn in Plaintiff's favor, show that he is entitled to relief under Counts VI and VII.

The Amended Complaint does not need to allege specific facts to support the allegation Defendant willfully violated the FLSA for a three-year statute of limitations at the motion to dismiss phase. Plaintiff has met his burden and has sufficiently alleged that the allegations, when taken as true, plausibly suggest that Defendant willfully violated the FLSA. The Amended Complaint also sufficiently alleges that Plaintiff suffered an injury which would be common among other similarly situated class members. Finally, Plaintiff satisfies all requirements to establish a Rule 23 class action involving claims under the VWPA. For the foregoing reasons, this Court should deny Defendant's Partial Motion to Dismiss and Motion to Strike Class and Collective Actions.

Dated: September 10, 2025

                                Respectfully Submitted,

                                */s/ Dylan Craig.*
                                Dylan Craig

                                Christopher E. Collins (VSB No. 90632)
                                Mia Yugo (VSB No. 92975)
                                Dylan Craig (VSB No. 100709)
                                YUGO COLLINS, PLLC
                                25 Franklin Road, SW
                                Roanoke, Virginia 24011
                                Tel: (540) 861-1529
                                Direct: (540) 855-4791
                                Chris@YugoCollins.com
                                Mia@YugoCollins.com
                                Dylan@YugoCollins.com

                                *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of September, 2025, I electronically filed the foregoing Plaintiff's Memorandum in Opposition to the Partial Motion to Dismiss and Motion to Strike Class and Collective Action with the Clerk of the Court using the CM/ECF system, which will notify the following parties of record:

>Tiffany din Fagel Tse, (VSB No. 92958)
>Alexander P. Berg (VSB No. 95557)
>ttse@littler.com
>aberg@littler.com
>LITTLER MENDELSON, P.C.
>1800 Tysons Boulevard
>Suite 500
>Tysons Corner, VA 22102
>Telephone: 703.442.8425
>Facsimile: 703.662.6178
>
>*Counsel for Defendant*

>/s/ *Dylan Craig*
>Dylan Craig