CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED

6/5/2026
LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| LEVAR FOWLER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:24-cv-00029 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CAESARS VIRGINIA, LLC, | ) | By:   Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendant. | ) | |

In August 2024, Plaintiff Levar Fowler ("Fowler") sued his former employer, Caesars

Virginia, LLC ("Caesars"),[1] alleging that Caesars violated his federal and state rights when it

fired him after he complained that a co-worker repeatedly referred to him as "boy," called him

the "N-word," and engaged in other allegedly discriminatory and threatening conduct. Caesars

moved to dismiss Fowler's complaint in part, seeking dismissal of his hostile-work-

environment claim and his retaliation claim under the Virginia Whistleblower Protection Law.

(ECF No. 4.) In March 2025, this court denied Caesars's motion as to the former claim and

granted it as to the latter. (ECF No. 10.)

---

[1] Caesars contends that "Caesars Virginia, LLC is not the proper entity for this suit as Plaintiff was employed by Caesars Resort Collection, LLC … during the relevant timeframe." (Def. Br. in Supp. Mot. to Dismiss at 1 n.1 [ECF No. 33].) Fowler, in turn, argues that "Caesars Virginia, LLC is the only Caesars entity registered to do business in Virginia. It appears these two entities likely acted as an integrated employer with respect to Plaintiff and are both liable." (Pl. Br. in Opp. at 1 n.1 [ECF No. 34].) To determine whether an employee was employed by multiple entities simultaneously, courts in this circuit apply a fact-intensive, four-factor "integrated employer" test, which requires considering: "(1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control." *United States v. Univ. Health Servs., Inc.*, No. 1:07-cv-00054, 2010 WL 4323082, at *6 (W.D. Va. Oct. 31, 2010) (citing *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir. 1999) (abrogated on other grounds)). The parties have not fully briefed this matter, and the court does not have enough facts at this stage to determine whether these two entities acted as an integrated employer with respect to Fowler. In any event, those facts are not necessary to resolve the instant motion on the merits.

In August 2025, Fowler filed an amended complaint adding two new claims for violations of the Fair Labor Standards Act ("FLSA") and the Virginia Wage Payment Act ("VWPA"), respectively. (ECF No. 20.) Caesars moved to dismiss these new claims, arguing that Fowler's FLSA claim is time-barred under the standard statute of limitations, and that Fowler's allegations were insufficient to entitle him to the three-year statute of limitations. (ECF No. 21.) In October 2025, the court granted Caesars's second motion to dismiss but gave Fowler the opportunity to amend his complaint to cure his pleading deficiencies as to Caesars's alleged willful violation of the FLSA. (ECF No. 28.)

Fowler filed a second amended complaint (ECF No. 29), and Caesars once again moves to dismiss the FLSA and VWPA claims. (ECF No. 32.) Caesars argues that Fowler again did not sufficiently allege that it willfully violated the FLSA, and, in the alternative, that Fowler did not state a claim for unpaid overtime. Caesars also argues that, if the court dismisses his individual FLSA claim, then his individual VWPA claim, as well as the collective action and class-action claims under the FLSA and VWPA, respectively, must also be dismissed because they both arise from the same facts. The court agrees with Caesars that Fowler did not state a claim for unpaid overtime and will therefore grant Caesars's motion.

## I.   STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

The court previously recited the relevant facts in this matter in its March 3, 2025 Memorandum Opinion addressing Caesars's first motion to dismiss. Because the instant motion seeks dismissal of claims that Fowler recently added, many of those facts are not relevant to the specific claims now before the court. In the interest of judicial economy, the

court incorporates the statement of facts and procedural background from its March 3, 2025 Memorandum Opinion. (ECF No. 10.)

After the court granted Caesars's motion to dismiss Fowler's FLSA and VWPA claims, Fowler amended his complaint for the second time to add additional facts and allegations related to those claims. In his second amended complaint ("SAC"), Fowler reiterates that "newly discovered documents show that he was actually undercompensated during his employment." (SAC ¶ 91 [ECF No. 29].) He explains that he was awarded a signing bonus when he was hired, which was nondiscretionary and "payable within the first 30 days of employment." (*Id.* ¶¶ 92–93, Am. Compl. Ex. 5.)[2] Fowler's offer letter provided that this bonus would be repayable to Caesars if he left voluntarily or was terminated for violating company policies within 12 months of employment. (Am. Compl. Ex. 5.) Fowler contends that because of this provision, the bonus "should have been calculated into [his] minimum wages when determining his overtime rate over the following 12-month period." (*Id.* ¶¶ 149–51.) He further notes that he worked overtime during three pay periods between early June and mid-July, but Caesars did not incorporate the sign-on bonus into his overtime rate for those pay periods. (*Id.* ¶¶ 95–101.) Specifically, Fowler explains that "12 months equates to 2,080 hours of work, meaning that this $5,000 [bonus] equals a pro-rated amount of $2.50/hr[,]" but, for those three pay periods where he worked overtime, he was "compensated for his overtime at his regular rate of $32.50 instead of $34.90." (*Id.* ¶¶ 94, 97.)

---

[2] Although the offer letter was not attached to Fowler's SAC (it was attached as an exhibit in his *Amended Complaint*), the court will still consider that document because it is integral to the SAC and its authenticity is not disputed. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

Fowler's SAC also contains new, additional allegations that relate to Caesars's purported willfulness in failing to pay him proper overtime. He asserts that his paystubs were processed by Caesars's in-house payroll department, which has "complete control" over overtime calculations and "all components of calculating [Fowler's] pay." (*Id.* ¶¶ 102–03.) Fowler alleges that, as a result, "Caesars was directly responsible for ensuring that all rules and regulations of the FLSA were being maintained." (*Id.* ¶ 104.) Fowler specifically points to 29 C.F.R. § 778.211, which provides that "nondiscretionary bonuses must be included in the employee's regular rate of pay when calculating his overtime premiums." (*Id.* ¶ 161.) Fowler contends that Caesars "knew or should have known of its responsibilities to include non-discretionary bonuses into an employee's rate of pay[,]" and, in particular, Caesars "knew or should have known that the bonus [Fowler] received pertained to a 12-month period, thus the pro-rated portion of the bonus should have been included into [Fowler's] regular rate of pay when calculating his overtime rate." (*Id.* ¶ 166.) Finally, he states that Caesars

> purposefully, intentionally, and deliberately excluded this non-discretionary bonus from [Fowler's] rate of pay, thereby denying [Fowler] and other similarly situated employees their full overtime wages owed under the FLSA.
>
> . . . By failing to incorporate [Fowler's] bonus into his regular rate of pay, Caesars either knew its conduct violated the FLSA or showed reckless disregard for whether its conduct violated the FLSA.

(*Id.* ¶¶ 167–68.)

Caesars filed the present partial motion to dismiss on November 25, 2025. (ECF No. 32.) Like its previous motion, Caesars challenges only Counts 6 and 7. Fowler filed a response (ECF No. 34), and Caesars replied (ECF No. 35), making this matter ripe for disposition.[3]

## II.    STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557). When evaluating the sufficiency of a complaint, the court is obligated to consider the factual allegations asserted in the complaint as well as any exhibits attached thereto. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing Fed. R. Civ. P. 10(c)).

## III.    DISCUSSION

A. Count 6: Collective Action under the FLSA

  1. Statute of Limitations

---

[3] Neither party requested oral argument, and the court does not believe that oral argument would aid in determining the legal issues presented in the motion.

Caesars argues that Fowler's conclusory assertions that Caesars handles its employees' paystubs in-house and is therefore responsible for ensuring compliance with the FLSA "do not sufficiently allege *facts* that plausibly show willfulness." (Def. Br. in Supp. Mot. Dismiss at 10. [ECF No. 33.]) In response, Fowler argues that he did "not need to allege specific facts to support the allegation that [Caesars] willfully violated the FLSA for a three-year statute of limitations at the motion to dismiss stage" because "employer willfulness is generally a question of fact." (Pl. Resp. in Opp. Mot. Dismiss at 10 (quoting *Farias v. Strickland Waterproofing Co.*, No. 3:20-cv-00076, 2021 WL 2272487, at *3 (W.D. Va. June 3, 2021)).) Fowler also argues that, in any case, his allegations as to Caesars's payroll operations raise a plausible inference that Caesars knew or recklessly disregarded that it was violating the FLSA by failing to incorporate his bonus into his overtime rate. (*Id.*) The court agrees with Fowler.

"[T]he length of the FLSA's statute of limitations depends upon whether the violation at issue was willful." *Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 130 (4th Cir. 2015). Generally, the limitations period for FLSA claims is two years, but "the period is three years for willful violations." *Id.*; *see also* 29 U.S.C. § 255(a). Fowler was terminated from his employment at Caesars on July 21, 2023; Fowler's cause of action under the FLSA accrued on that date and, accordingly, the latest date Fowler could file a general FLSA claim was July 21, 2025. The parties do not dispute that, because Fowler did not add his FLSA claim until he filed the amended complaint on August 13, 2025, that claim is time-barred under the standard two-year statute of limitations. Rather, the parties dispute whether Fowler's allegations adequately alleged a willful violation the FLSA so as to entitle him to the three-year standard of limitations for willful violations of the FLSA.

An employer who "'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]' [has] willfully violated" the FLSA. *Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 358 (4th Cir. 2011) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). At the motion to dismiss stage, "the timeliness of an action based on the two[-] or three[-]year statute will be determined by whether a plaintiff has alleged a plausible FLSA claim and avers the employer's willful violation generally." *Aguirre v. Joe Theismann's Rest.*, No. 1:19-cv-556, 2019 WL 12267459, at *5 (E.D. Va. July 23, 2019). Although the Fourth Circuit has yet to resolve the issue, courts in this district have adopted the pleading standard that "a plaintiff 'does not need to allege specific facts' to support an allegation 'that defendants willfully violated the FLSA'" to receive the three-year statute of limitations at the motion to dismiss stage. *Farias*, 2021 WL 2272487, at *3. To survive a motion to dismiss, "an allegation of willfulness is sufficient." *Id.* Accordingly, the issue is whether a plaintiff's "complaint fails on its face to plausibly allege a willful violation of the statute." *Id.*

"Because the question of whether [a defendant's] alleged violations were 'willful' is not an element of [a plaintiff's claims]' but rather 'an anticipation of a limitations defense that [a defendant] may raise,' [a plaintiff] does not need to allege specific facts that [a defendant] willfully violated the FLSA." *Rose v. Harloe Mgmt. Corp.*, No. GLR-16-761, 2017 WL 193295, at *4 (D. Md. Jan. 17, 2017). "[A]ny requirement to allege facts regarding 'conditions of the mind with specificity . . . would be virtually impossible to do'" before discovery. *Battle v. City of Alexandria*, No. 1:14-cv-1714, 2015 WL 1650246, at *6 (E.D. Va. Apr. 14, 2015) (quoting *Settle v. S.W. Rodgers, Co., Inc.*, 998 F. Supp. 657, 664 (E.D. Va. 1998)). As a result, courts in this circuit look at whether a plaintiff "generally averred willfulness" in his complaint. *Mullin v.*

*Capital One Servs., Inc.*, No. 3:24-cv-00816, 2025 WL 2772478, at *18 (E.D. Va. Sep. 26, 2025);

*see, e.g.*, *Aviles-Cervantes v. Outside Unlimited, Inc.*, 276 F. Supp. 3d 480, 491 (D. Md. 2017)

("Plaintiffs have alleged that [the defendant] acted willfully or with reckless disregard in failing

to pay [them]" and "*intentionally* did not record all of their compensable hours of work."

(cleaned up)); *Battle*, 2015 WL 1650246, at *6 ("Here, Plaintiff expressly alleges that

Defendant's demotion of [the plaintiff] was willful and in reckless disregard of her right to

take FMLA qualifying leave. Defendant expects more specificity, but none is required here."

(cleaned up)).[4] For example, in *Farias*, a court in this district pointed to the plaintiff's statement

in his complaint that the defendant's violations were "repeated, knowing, willful and

intentional" in holding that he sufficiently alleged willfulness. *Farias*, 2021 WL 2272487, at *3.

Here, Fowler generally averred in his SAC that Caesars violated the FLSA willfully or

with reckless disregard. (SAC ¶ 170 ("As a result of [Caesars's] conduct, [Caesars] acted

willfully or with reckless disregard in failing to comply with all FLSA rules and regulations

governing overtime rates.").) This allegation, by itself, is sufficient at this stage. *See Hardy v.

Lewis Gale Med. Ctr., LLC*, 377 F. Supp. 3d 596, 618 (W.D. Va. 2019) ("Plaintiffs may bear the

burden to prove willfulness but not at the motion to dismiss stage."); *Aviles-Cervantes*, 276 F.

Supp. 3d at 491 (holding that the plaintiffs were entitled to the three-year statute of limitations

because they alleged that the defendant "acted willfully or with reckless disregard . . ." and that

the defendant "intentionally did not record all their compensable hours of work."); *Settle*, 998

---

[4] The Family Medical Leave Act ("FMLA") has the same statute of limitations provisions as FLSA; namely, that FMLA claims are generally subject to a two-year statute of limitations, but if an alleged violation is willful, the limitations period extends to three years. 29 U.S.C. §§ 2617(c)(1)–(2). Therefore, cases analyzing whether a plaintiff sufficiently pleaded that his/her employer willfully violated the FLMA, while not controlling, are instructive.

F. Supp. at 664 ("[A] general averment as to willfulness should be sufficient to trigger the three-year limitations period.").

Accordingly, Fowler's pleadings are sufficient to entitle him to the three-year statute of limitations under the FLSA.

### 2.  Failure to State an Unpaid Overtime Claim under the FLSA

Next, Caesars argues that Fowler's unpaid overtime claim fails as a matter of law and Fowler has therefore failed to state a claim. (Def. Br. in Supp. Mot. Dismiss at 13.) Caesars points to the language in 29 C.F.R. § 778.209: "[n]o difficulty arises in computing overtime compensation if the bonus covers only one weekly pay period." (*Id.*) Caesars explains that Fowler received the sign-on bonus as a lump sum payment during his first week of employment and that Fowler did not work overtime during that week or during the first 30 days of his employment (the time period in which the bonus was payable under the terms of the offer letter). (*Id.* at 13–14.) Therefore, according to Caesars, Fowler was not entitled to have his bonus computed in his overtime pay because he did not work overtime during the period in which the bonus could have been applied. Fowler counters that, "[b]ecause the sign-on bonus was potentially repayable to [Caesars] during the course of a 12-month period, [Fowler's] continued employment was a condition of receiving the sign-on bonus. Therefore, for 12 months, [Fowler] was earning the sign-on bonus, and the sign-on bonus was clearly not intended to cover only the period in which he was paid." (Pl. Br. in Opp. Mot. Dismiss at 13.) And because Fowler was continuing to "earn" the bonus during his first year of employment, Fowler argues that Caesars was required to include it in his overtime rate for the entire 12-

month period. (*Id.*) While the court will grant Caesars's motion with respect to this claim, neither party has correctly interpreted the controlling law on this issue.

"Generally, an employee's regular rate of pay includes 'all renumeration for employment paid to, or on behalf of, the employee.'" *Brown v. Nipper Auto Parts & Supplies, Inc.*, No. 7:08-cv-521, 2009 WL 1437836, at *7 (W.D. Va. May 21, 2009) (quoting 29 U.S.C. § 207(e)). "Where a bonus payment is considered a part of the regular rate at which an employee is employed, it must be included in computing his regular hourly rate of pay and overtime compensation." 29 C.F.R. § 778.209(a); *see also* 29 U.S.C. § 207(a)(1). Purely discretionary bonuses—*i.e.*, "those paid at the sole discretion of the employer" and "not pursuant to any prior contract, agreement, or promise"—are excluded from calculation in the regular rate. 29 U.S.C. § 207(e)(3). "Therefore, a bonus is no longer discretionary, and is included in the calculation of the regular rate of pay when 'the employer promises in advance to pay a bonus, . . . even if that promise is attended by certain conditions.'" *Brown*, 2009 WL 1437836, at *7 (first quoting 29 C.F.R. § 778.211(b), then quoting *Gonzales v. McNeil Tech.*, No. 1:06-cv-204, 2007 WL 1097887, at *4 (E.D. Va. Apr. 11, 2007)). Because the terms of the sign-on bonus were set out in the offer letter, Fowler is correct that it is nondiscretionary.

Although Caesars cited a portion of 29 C.F.R. § 778.209 in its argument, the following language (from the same regulation) is more relevant to the issue of how *this* bonus should have been considered when calculating Fowler's rate of pay for overtime:

> Under many bonus plans, however, calculations of the bonus may necessarily be deferred over a period of time longer than a workweek. In such a case the employer may disregard the bonus in computing the regular hourly rate until such time as the amount of the bonus can be ascertained. Until that is done he may pay compensation for overtime at one and one-half times

> the hourly rate paid by the employee, exclusive of the bonus. When the amount of the bonus can be ascertained, it must be apportioned back over the workweeks of the period during which it may be said to have been earned.

29 C.F.R. § 778.209(a). Fowler's sign-on bonus falls under this rule because of the provision that it was repayable to Caesars if Fowler left or was terminated within 12 months. Additionally, the offer letter laid out a staggered repayment schedule, wherein the entire bonus was repayable if Fowler's termination date was within three months of his start date (then, 75 percent was repayable if the termination date was between three and six months of the start date; 50 percent was repayable if the termination date was between six and nine months of the start date, and so on). (Am. Compl. Ex. 5.) Because of that staggered repayment schedule, the amount of the sign-on bonus Fowler was entitled to was not immediately known by Caesars when he started working. Caesars, therefore, was permitted to "disregard the bonus in computing the regular hourly rate" until the amount of bonus Fowler was entitled to could be ascertained (*i.e.* at the end of the twelve-month period or upon his termination from the job, whichever would have been earlier). And because Fowler was terminated approximately two-and-a-half months after his start date, the entire sign-on bonus was repayable and, as a matter of basic contract interpretation, Fowler was not actually entitled to any of the bonus upon his termination. *See, e.g.*, *McCarley v. City of Hamilton Police Dep't*, No. 1:25-cv-348, 2026 WL 820888, at *4 (S.D. Ohio Mar. 25, 2026) (holding that because the retention bonus at issue was contingent upon the plaintiff's continued employment with the defendant until a certain date and it was therefore uncertain as to whether the plaintiff was entitled to the bonus, the defendant did not violate the FLSA by not calculating the bonus into the plaintiff's overtime rate even though he was paid the bonus in advance). Accordingly, under these facts, Fowler

was not entitled to any portion the sign-on bonus, and Caesars did not violate the FLSA by not incorporating the bonus into Fowler's overtime rate.[5]

Additionally, in its reply brief, Caesars notes that Fowler did not allege that he was required to repay the sign-on bonus after his termination. (Def. Reply Br. at 10.) Whether or not Fowler was required to pay back the bonus does not change the ultimate outcome. If Fowler, in fact, was not required to repay the bonus, the bonus became discretionary because Caesars decided—outside of the terms of the offer letter—that it would not require Fowler to repay it. *See* 29 U.S.C. § 207(e)(3); 29 C.F.R. § 778.211(b). And discretionary bonuses are excluded from overtime rate calculations. 29 C.F.R. § 778.208. There would therefore be no violation of the FLSA on Caesars's part in that circumstance as well.

Because Fowler failed to state a claim that Caesars violated the FLSA, his collective action claim on behalf of similarly situated class members must be dismissed. *See Beck v. McDonald*, 848 F.3d 262, 269–70 (4th Cir. 2017) (explaining that standing in a class action is analyzed based on the personal injury allegations made by the named plaintiff, and that "[w]ithout a sufficient allegation of harm to the named plaintiff in particular, plaintiffs cannot meet their burden of establishing standing." (quoting *Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011))). Without a justiciable action as to Fowler individually, his purported collective action under the FLSA fails. *See Midkiff v. Anthem Cos., Inc.*, 640 F. Supp. 3d 486, 492 (E.D. Va. 2022)

---

[5] The court acknowledges that in its October 2025 Memorandum Opinion, it stated that "Fowler's factual allegations are sufficient to state a plausible claim that Caesars violated the FLSA by undercompensating him for his overtime rate." *Fowler*, 2025 WL 3013129, at *4 (citing *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017) (holding that a plaintiff can make out a plausible overtime by alleging certain facts, such as the length of her average workweek during the applicable period, the average rate at which she was paid, and the amount of overtime wages she believes she is owed)). In that opinion, the court did not give proper consideration to the significance and applicability of the regulations—particularly 29 C.F.R. § 778.209(a)—to this set of circumstances, and therefore rescinds the above-quoted statement.

("A district court's determination of whether to grant conditional certification [for a collective action under the FLSA] requires plaintiffs to make a modest factual showing sufficient to demonstrate that they and potential plaintiffs were victims of a common policy or plan that violated the law." (cleaned up)). Accordingly, the court will dismiss Count 6.

B.  Count 7: Class Action under the VWPA

Fowler's claim under the VWPA is inextricably tied to Fowler's FLSA claim, as both claims arise under the same facts.[6] (SAC ¶¶ 173, 175 (re-alleging and incorporating by reference paragraphs 1–172 and stating that "[b]y violating the FLSA and withholding Named Plaintiff's wages, Defendant also violated the VWPA.").) Because Fowler's FLSA claim has been dismissed, the court declines to exercise supplemental jurisdiction over his VWPA claim here. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]").

Like Fowler's FLSA claim, his Rule 23 class action claim under the VWPA must also be dismissed. *See Beck*, 848 F.3d at 269–70; *CASA, Inc v. Trump*, No. DLB-25-201, 2025 WL 2263001, at *5 (D. Md. Aug. 7, 2025) ("Without an appropriate class representative, courts will not make 'an exception to the usual rule that litigation is conducted by and on behalf of

---

[6] Additionally, the relevant portion of the VWPA—providing for a private right of action—states:

> [I]f an employer fails to pay wages to an employee in accordance with this section, the employee may bring an action, individually, jointly, with other aggrieved employees, or on behalf of similarly situated employees as a collective action consistent with the collective action procedures of the [FLSA], against the employer in a court of competent jurisdiction to recover payment of the wages[.]

Va. Code Ann. § 40.1-29(J). This language further demonstrates that Fowler's VWPA claim was tied to his FLSA claim such that the former cannot go on without the latter.

the individual named parties only.'" (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011))). Accordingly, the court will dismiss Count 7.

## IV.   CONCLUSION

For the reasons discussed above, Caesars's partial motion to dismiss will be granted.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 5th day of June, 2026.

*/s/ Thomas T. Cullen*_____
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE
